## EVANGELICAL BAPTIST BENEVOLENT AND MISSIONARY SOCIETY *vs.* CITY OF BOSTON.

Suffolk.    November 17, 1909. — January 5, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Tax,* Exemption. *Religious Society. Evangelical Baptist Benevolent and Missionary Society. Tremont Temple. Corporation,* Holding property *ultra vires.*

R. L. c. 12, § 5, cl. 7, exempting from taxation "houses of religious worship owned by, or held in trust for the use of, any religious organization," is to be construed as if the words "occupying and using them as such" were inserted after the words above quoted, and does not apply to the owner of a house of religious worship, even if that owner be a religious organization, that never has occupied or used the house for religious worship, but has held it only to be let to others.

The Evangelical Baptist Benevolent and Missionary Society, incorporated by St. 1857, c. 154, which owns and maintains a building in Boston called the Tremont Temple, used in part for business and in part for religious purposes, and which

leases the building to the Tremont Temple Baptist Church, a religious organization, and has a contract with that organization in regard to the management, use and occupation of different parts of the building, and in regard to the collection and disposition of rents, does not hold the building in trust for the use of the church within the meaning of R. L. c. 12, § 5, cl. 7, exempting from taxation "houses of religious worship owned by, or held in trust for the use of, any religious organization."

The Evangelical Baptist Benevolent and Missionary Society was incorporated by St. 1857, c. 154, which by § 2 gave it the right to hold property to the amount of $350,000, and exempted from taxation its property to that amount. That corporation, owning a building of which the fair valuation was more than $900,000, sought to have the building wholly exempted from taxation on the ground that it was a house "of religious worship owned by, or held in trust for the use of" a religious organization and therefore was exempted from taxation by R. L. c. 12, § 5, cl. 7. *Held*, that the corporation, whose holding of property in excess of the amount of $350,000 was *ultra vires* and invalid as against the Commonwealth, could not claim an exemption from city, county and State taxes under the general law above named, which is intended to exempt from taxation only such property as is permitted by law to be held for the purposes specified.

TWO APPEALS, filed in the Superior Court on April 1, 1907, and May 4, 1908, from refusals of the assessors of the city of Boston to abate taxes assessed to the petitioner.

In the Superior Court there was a long trial of the cases before *Fessenden*, J. He made certain findings of fact, which are stated in substance in the opinion. Upon these facts, he granted no abatement, and ordered *pro forma* that judgment should be entered for the respondent for its expenses and costs; and, at the request of the parties, he reported the cases for determination by this court. If his declining to grant an abatement was right, the judgment was to be affirmed; otherwise, such order, decree or judgment was to be entered as law and justice should require.

*S. L. Whipple & E. M. Brooks*, for the plaintiff.

*T. M. Babson*, for the defendant.

KNOWLTON, C. J. Each of these cases is an appeal by the petitioner to the Superior Court from the refusal of the assessors of the city of Boston to abate a tax assessed to the petitioner. The petitioner was incorporated by a special act of the Legislature (St. 1857, c. 154) " for the purpose of securing the constant maintenance in said Boston of evangelical preaching for the young and the destitute, with free seats; for the employment of colporteur and missionary laborers in Boston and elsewhere; for the purpose of providing suitable central apartments to

other and kindred benevolent and missionary societies, and for the general purpose of ministering to the spiritual wants of the needy and destitute." By § 2 of the act it was authorized to hold real and personal estate to the amount of $350,000, and this property was exempted from taxation. It is now holding property, the fair valuation of which is $911,000,* and upon its application to have this larger amount exempted from taxation, it was decided in an action brought by this petitioner against the city of Boston, as reported in 192 Mass. 412, that its right to an exemption is limited to the amount named in its charter.

In the present petition it puts its claim upon different grounds, and contends that it is entitled to exemption under the R. L. c. 12, § 5, cl. 7, which is as follows:

" Seventh, Houses of religious worship owned by, or held in trust for the use of, any religious organization, and the pews and furniture; but the exemption shall not extend to portions of such houses appropriated for purposes other than religious worship or instruction."

The petitioner's constitution recites that " this society is organized for the purpose of receiving, holding and managing the estate known as the Tremont Temple, in accordance with the provisions of the act of incorporation," etc. From the time of its incorporation it has owned and managed this real estate, with different buildings upon it at different times, as new structures have been erected to replace those injured or destroyed by fire. The property is in a very attractive and important part of the business district of Boston. The present building, like those that preceded it, is used in part for business and in part for religious purposes. Important portions of it were originally constructed and have always been used exclusively for the transaction of business. Other parts have been used regularly both for religious and business purposes. These parts include five halls — Converse Hall, Lorimer Hall, Chapman Hall, Gilbert Hall and Social Hall, with the Blue Room, parlors, corridors and other appurtenances. These have all been used regularly by Tremont Temple Baptist Church for religious purposes, and have also been rented very frequently,

* This was the valuation of the Tremont Temple building made by the assessors of the city of Boston.

and as often as opportunity offered without interfering with the regular uses by this church, for secular gatherings, and for different religious gatherings of other organizations. It has been an important part of the business of the petitioner to obtain an income from these rentals, although the rental value of the use by the Tremont Temple Baptist Church has been largely in excess of the rent received from other parties for the use of the same parts of the building. Converse Hall has been used as the main auditorium of this church.

It becomes necessary to consider the meaning of the R. L. c. 12, § 5, cl. 7, above quoted. The purpose of the provision was to exempt from taxation ordinary church edifices, owned and used in the usual way for religious worship. Probably such an unusual condition as appears in this case was never contemplated by the framers of the statute. The special provision about ownership or holding in trust was first enacted by the St. 1865, c. 206. The form of this statute, as well as the more condensed forms of the later revisions of it (see Pub. Sts. c. 11, § 5, cl. 7, R. L., *ubi supra*), which were not intended to change its meaning, implies that the exemption was intended only for houses owned by, or held in trust for, religious organizations that occupy and use them for worship. We are of opinion that this clause of the present revision should be construed as if the words "occupying and using them as such," were inserted after the words, "religious organization." We do not think that the statute applies to the owner of a house of religious worship, even if that owner be a religious organization, that has never occupied or used the house for religious worship, but has held it only to be let to others. If the petitioner be called a religious organization, as in a broad sense it undoubtedly is, we do not think it is such a kind of a religious organization, in reference to its ownership of property, as the statute exempts from taxation as an owner. It is not the owner of a house of religious worship which is occupied and used by it as such.

The Tremont Temple Baptist Church is a religious organization within the meaning of this statute. Is this building a house of worship held in trust for this church? It is at least very doubtful whether the building is a house of worship such as was intended by the Legislature. Very spacious and valuable parts

of the building were never used for religious worship and have no relation to a religious use. The other parts are used in part for worship and in part for many other purposes. The building could hardly be called a church edifice. In many if not most of its features, it has the characteristics of income-producing property. Those parts of the building which are used for worship are not held in trust for the Tremont Temple Baptist Church in any strict or technical sense. The first instrument under which the church held is called a " a license or lease," and it purports to license and empower the church to use the property on certain terms. In other parts of the instrument it is called merely a " lease." The petitioner reserves the right to sell and terminate the rights of the church in the property at any time. By a modification of the original indenture, bearing date December 5, 1863, it was provided, among other things, that if the church should settle a minister without submitting the matter of his selection to the directors of the corporation, or otherwise than as provided in this new agreement, it should be a violation of the covenants and agreements of the indenture, and should absolutely and finally determine all rights, privileges and estate of the church in or under the indenture, and in and to the parts of the building therein mentioned. The sentence ended with these words : " and the lease or license of said church to occupy the same or any part thereof shall thereupon, *ipso facto*, cease and determine." Another indenture was made on March 13, 1894, which modified the former agreements and reaffirmed them in some parts. It is a contract between the parties in regard to the management, use and occupation of different parts of a building to be erected, which is the present building, and in regard to the collection and disposition of rents received. The word " trust " does not anywhere appear in it. In neither of the indentures is there any reference to any trust as between the petitioner and the church. While, in a broad sense, it may be said that some relations of trust grow out of the undertakings of the parties, we do not think that this building appears to be held in trust for the church, within the meaning of the statute.

There is another consideration of some importance. The petitioner seeks to apply this general statute for the exemption of houses of worship to its ownership under a special

charter by which its right to hold property is limited to the amount of $350,000 in value.  Its ownership beyond that amount is without authority under its charter.  Some courts have held that the title of a corporation, to property beyond the amount authorized to be held, is absolutely void.  But this court, after considering the subject at length in *Hubbard* v. *Worcester Art Museum*, 194 Mass. 280, held that such ownership is invalid as against the State, and that the public authorities alone can take advantage of the irregularity.

The question at once arises whether, under a system that provides for the taxation of all property, unless an exemption is created by statute and is plainly established, the general law invoked by this petitioner can be held applicable to create an exemption in favor of a party whose holding is *ultra vires*, and in excess of the authority given by its charter.  This exemption is claimed against an assessment for city, county and State taxes. The claim is made against the public authorities representing the State.  We are of opinion that a party, asking an exemption of his property under this general statute, must come as an owner who has a title which the State is bound to recognize. A corporation, which as against the State has no right to hold such property, is not in a position to claim a statutory exemption which is intended only for a holding fully authorized by law.  We are of opinion that this petitioner, under the limitations of its charter, has no standing, as an owner of this large amount of property, to ask for the application of this general law.

*Judgments affirmed.*