GUNTER *v.* CITY OF JACKSON.

[94 South. 842, In Banc.   No. 22889.]

1. MUNICIPAL CORPORATIONS. *Collection of taxes is proceeding on behalf of public.*

A municipality is only a political subdivision of the state, and the assessment and collection of taxes by the municipality is as much a proceeding on behalf of the public as a like proceeding in the name of the state for the collection of its taxes.

2. TAXATION. *That property claimed to be exempt is illegally owned may be shown, though there has been no escheat.*

In a proceeding by the state or any of its political subdivisions to fix or enforce a tax charge on property of a church, whose right of exemption depends on whether the title is held in violation of the public policy of the state as contained in Code 1906, section 934 (Hemingway's Code, section 4110), prescribing the property which may be owned by a religious society, congregation, or ecclesiastical body, it is competent to show that the title is so held, though there has been no proceeding by the state to escheat the title.

3. TAXATION. *Property owned by church not exempt when it has no right to own it.*

When a church owns real estate which it is not entitled to own, under Code 1906, section 934 (Hemingway's Code, section 4110), such prop-

erty is subject to all taxes to which other property of like character owned by others is subject, and is not exempt under Code 1906, section 4252 (Hemingway's Code, section 6883).

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by the City of Jackson against R. B. Gunter, Corresponding Secretary and Treasurer of Mississippi Baptist State Convention Board. Judgment for plaintiff, and defendant appeals. Affirmed.

*George Butler*, for appellant.

The statutes exempting property devoted to religious, charitable and educational uses are liberally construed. *Mattern* v. *Canevin*, 213 Pa. St. 588; *State* v. *Platt*, 24 N. J. L. 109; *M. E. Church* v. *Hinton*, 92 Tenn. 188, 19 L. R. A. 289; *Preston* v. *City of Jackson*, 83 Miss. 366; *Adams County* v. *Diocese of Natchez*, 110 Miss. 890; *State* v. *Fisk University*, 87 Tenn. 341, 10 S. W. 286; *Holly Springs* v. *Marshall County*, 104 Miss. 761, 61 So. 703.

And let it be noted that Mississippi is not alone in this construction. The same rule is announced in *Mattern* v. *Canevin*, 213 Pa. St. 588; *State* v. *Platt*, 24 N. J. L. 109; *State* v. *Fisk University*, 87 Tenn. 241; *M. E. Church* v. *Hinton*, 92 Tenn. 188, 19 L. R. A. 289; *Commonwealth* v. *Y. M. C. A.*, 115 Va. 745, 50 L. R. A. (N. S.) 1197; *Vanderbilt University* v. *Cheney*, 116 Tenn. —; *Cumberland Lodge* v. *Nashville*, 127 Tenn. 248; *Sisters of Charity* v. *Chathan*, 52 N. J. L. 273; *Firemen's Association* v. *Johnson*, 62 N. J. L. 625.

Even where the statutes do not in express terms exempt the revenues of such societies, the court quite frequently holds that where the revenues are devoted to the purposes of the societies, the property remains exempt. *New Orleans Female Orphanage* v. *Houston*, 37 La. Ann. 68; *Scott* v. *St. Johns Academy*, 86 Vt. 172 (lands bought out of endowment funds) ; *People ex rel.* v. *Doling*, 39 N. Y. Supp.

765; *Old South Association* v. *Boston,* 112 Mass. 299; *State* v. *Bishop of Seberry,* 90 Minn. 92 (endowment funds exempt); *Liddle* v. *U. S. Theological Seminary,* 72 Ohio St. 417; *State* v. *Johnson,* 62 N. J. L. 625; *Stonebaum* v. *Mary Seminary,* 99 Va. 653; *New Haven* v. *Scientific School,* 69 Conn. 163; *Female School* v. *Louisville,* 100 Ky. 470; *State* v. *Silverhorn,* 52 N. J. L. 72 (endowment funds exempt); *Northwestern University* v. *Illinois,* 99 U. S. 309, 25 L. Ed. 387, 37 Cyc., page 939; *Brown University* v. *Gardner* (R. I.), 36 L. R. A. 847; *Ellisworth College* v. *Emmet County,* 42 L. R. A. (N. S.) 530.

The property stands in lieu of the funds and is exempt. *Kuhn Bros.* v. *Warren County,* 98 Miss. 769; *Ellsworth College* v. *Emmet County* (Iowa), 42 L. R. A. (N. S.) 530; *Norton* v. *Louisville,* 118 Ky. 836; *Watson* v. *Johnson,* 62 N. J. L. 625; *Scott* v. *St. Johns Academy,* 86 Vt. 172; *Brown University* v. *Granger,* 19 R. O. 704, 36 L. R. A. 847; *Preston* v. *City of Jackson,* 93 Miss. 366; St. *Johns Military Academy* v. *Edwards,* 143 Wis. 551, 139 A. S. R. 1123; *Gould* v. *Taylor Orphans Asylum,* 46 Wis. 106, 50 N. W. 422; *Dodge* v. *Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103; *Pearson* v. *Lane,* 17 Ves. Jr. 101; *Montgomery* v. *Wyman,* 130 Ill. 17, 22 N. E. 845; *Gerke* v. *Purcell,* 25 Ohio. St. 229; *Norton* v. *Louisville,* 118 Ky. 836, 82 S. W. 621; *Williston Seminary* v. *Hampshire County,* 147 Mass. 427, 18 N. E. 210; *State* v. *Watkins,* 108 Minn. 114, 121 N. W. 390; *Litz* v. *Johnson,* 65 N. J. L. 169, 46 Atl. 776; *Masonic Education & Charity Trust* v. *Boston,* 201 Mass. 320, 87 N. E. 602; *People ex rel. Crook* v. *Wells,* 179 N. Y. 257, 71 N. E. 1126.

The work is religious, benevolent and charitable in character and within the terms of the statutes. *M. E. Church* v. *Hinton,* 92 Tenn. 188; 19 L. R. A. 289; Bispham, Eq., secs. 112, 119; Story Eq. Jur., sec. 1164.

The principles announced in the Meridian Methodist Church case are unsound. *Children's Home* v. *Atlantic City,* not authority for Meridian Methodist Church case. *Children's Home* v. *Atlantic City,* is authority for, rather

than against the exemption.   A careful analysis of the opinion will show that the court of errors and appeals expressly held that the fact that the corporation held property in excess of that authorized by its character, would not defeat the exemption.

The holding of the court in Meridian Methodist Church case leads to absurd results.   Moreover, in the Methodist Church case this court held or assumed that all religious societies were to be deemed incorporated under section 933 of the Code of 1906, and incapable of holding property except as authorized by section 934 of that Code or else that section 934 was a restriction upon unincorporated as well as incorporated religious societies. 27 Cyc. 740; *Peoples* v. *Barton,* 63 N. Y. App. Div. 581; *People* v. *Feitner,* 33 Misc. (N. Y.) 712; *M. E. Church S.* v. *Hinton,* 92 Tenn. 188, 37 Cyc. 942.

The provision of the statute for exempting revenue producing property is meaningless if section 934 is applicable to all church property.   It is a fundamental rule of construction of statutes that all of the words and all parts of the statutes are to be given some meaning.   *McKenzie* v. *Boykin,* 111 Miss. 266; *Adams County* v. *Diocese of Natchez,* 110 Miss. 890; *Preston* v. *City of Jackson,* 93 Miss. 366; *Adams* v. *Railroad,* 75 Miss. 275; *Lemonius* v. *Mayer,* 71 Miss. 514; *Fitzgerald* v. *Rees,* 67 Miss. 473; *Swan* v. *Ruck,* 40 Miss. 268; and *Martin* v. *O'Brien,* 34 Miss. 21. Yet, if the opinion of the court is to be adhered to in the Methodist Church case, no property which is revenue-producing is exempt, and this for the very obvious reason that, under section 934 of the Code, a religious society cannot own income-producing property.   The property there enumerated is church buildings, pastor's home, cemetery, colleges, etc., none of which produce revenue.

Yet section 4252 expressly exempts all real and personal property and the revenues derived therefrom belonging to these religious and charitable institutions.   If this provision of the statute is to be given any meaning at all, it must of necessity be implied that the exemption is not

limited to the non-revenue producing property mentioned in section 934. These provisions of the statutes ought to receive a just, fair and reasonable construction, and should not be pared away and rendered altogether non-operative by reference to section 934.

The public policy of the state is not infringed by upholding the exemption. *Methodist Church* v. *Hinton, supra; Harrison County* v. *Gulfport Military Academy,* 126 Miss. 729.

Conclusion. In conclusion, we desire to say that the statutes should have a fair, just, broad and reasonable construction and one calculated to effectuate the legislative intent. It should also be construed to apply to incorporated as well as unincorporated societies and so as not to discriminate between those incorporated under the general law or under section 933 of the Code.

The property of all devoted to religious and charitable purposes should be exempted alike. There should be no discrimination in favor of property held by organizations similar to the Catholic Dioceses of Natchez, and against the property held in the manner involved in this case. It is respectfully submitted that the judgment of the court in Nos. 22889 and 22890, should be reversed and affirmed in 22891.

*Reed, Brandon & Brandon,* for appellant.

We respectfully submit and contend that Code 1906, sec. 4252 (Laws 1900, ch. 52), had the effect of enlarging and extending Code 1906, sec. 934, so as to authorize and permit a religious society (even though not incorporated), to own in addition to the property described in section 934, revenue-producing property where the revenues from such property are used for benevolent purposes and no dividends are declared.

In *Holly Springs* v. *Marshal County,* 104 Miss. 761, this court said: "In construing statutes, we must look to the intention of the legislature, the spirit of the law, and the policy and purpose of the same."

In *Adams County* v. *Catholic Diocese,* 110 Miss. 896, this court said: "It is well-settled law that in construing statutes, the letter must yield to the spirit and intent of the act, and where there is a conflict, the intent will control the construction."

Following these well-recognized rules, and in response to the argument of opposing counsel in the case of *Adams Co.* v. *Catholic Diocese,* to the effect that sections 4251 and 4252 were in conflict and could not be harmonized, this court said: "In this we disagree with the learned counsel for appellant, as it is clear that section 4252 of Code of 1906, does not conflict with, nor abridge the exemption given in section 4251, but simply extends the exemption so as to apply to property owned by religious societies when not used exclusively for the purposes of the society but producing revenue, provided the revenue is used for benevolent purposes and not for profit.

Now then it is but a step further, a very short step further, if this court will say, even as it has said section 4252 is not in conflict with, but enlarges section 4251, that so, also, section 4252 is not in conflict with section 934, but simply extends the property rights given thereunder, so as to enable a religious society, even though not incorporated but only organized to own in addition to the prescribed church, pastor's residence seminary, cemetery, etc., revenue-producing property, like the Harding Building, provided the revenues are used for fraternal or benevolent purposes, and that such property is exempt from taxation.

This contention is all the more reasonable for the reason that section 934, is a much older statute than section 4252, which was not enacted until the year 1900. As already recognized page 12, section 4252, was inspired by the *Redus* v. *Ridgley* case, and was made broad enough to expressly include religious societies, whether incorporated or not incorporated. The only condition as to exemption imposed, on religious and charitable societies, was that the revenues should be used for benevolent purposes.

The proposition now urged was not urged by counsel in *Central Methodist Church* v. *Meridian,* because in that case the property in question was vacant property, and no revenue therefrom was used for benevolent purposes, because it produced no revenue. Therefore on the particular facts of the case, this court held that the property in question was in excess of the amount which the religious society could hold and not exempt.

If the Central Methodist Church lot had contained a building, and the rents therefrom were being used for benevolent purposes, and the contention on those facts had been made that the Code, section 4252, enlarged section 934, so as to allow the church to own such property, would not the court even then have held that the contention was sound and the revenue producing property was exempt. Otherwise, how is it possible to give any force or effect whatever to that part of section 4252, which provides that revenue-producing real estate of a religious society is exempt where the revenues are used for benevolent purposes?

We most respectfully but earnestly urge that even though the opinion in the *Central Methodist Church* v. *Meridian* be not overruled entirely, that it should be so explained as to make it clear that it does not apply to revenue-producing property where the revenues are used for benevolent purposes, and that to this extent the older statute, section 934 is enlarged and extended by the more recent statute, section 4252.

*Garner W. Green,* for appellee.

There is no authority under section 4252 to reinvest; to turn over; to commercialize. All of the revenue must be used for benevolent and fraternal purposes, not commercial purposes, not increasing the business, because a business free from taxes could so expand as to swallow up all other less fortunate competitors and destroy them by its power. This statute says "revenues derived therefrom"—that is,

from the real and personal property, which does not mean selling them and re-investing, but a return made by them, from them, through them, while they still exist in their entirety. In short, rent, interest, which limit, in my opinion, the return within section 4252, and where the land in its entirety and the interest in its entirety is used for benevolent and fraternal purposes, then that section applies; otherwise, it does not. The cases cited in the original brief demonstrate this.

In short, the law does not authorize the conversion of tax-exempt property into commercial business in competition with other commercial business, and thereby destroying such other business. Equality, to all is the constitutional mandate, and where all of the revenue is used for fraternal and benevolent purposes, there would be no competition, no damage done, but if it were free to use and re-use and invest again the revenues of the church into commercial activities, then there could be by the church an absorption of all business activity, which was never contemplated.

Our position, with deference, is that, where there is a business enterprise, with a business possibility of loss, there is not an exemption from taxation because the revenues are used for business purposes, not for benevolent and fraternal purposes. The complete utilization of the revenues is that which is covered by section 4252 and constitutes a condition precedent to granting an exemption under its terms. There is no authorization to engage in business therein and re-invest the revenues in business at the expense of competitors.

Again, with deference, counsel overlook completely the mandatory terms of section 934. They set that section aside as meaningless, and contend that a church can violate the law by holding property in contravention of its terms, and then obtain a grace, if you please, from the law by violating its provisions. It is fundamental that one coming before a court must come with clean hands, must not have done iniquity, yet this church having done both, seeks from

the law for the actual doing thereof, this benefit, this immunity. With deference, it cannot be granted. They cannot be heard to set aside the constitutional imposition of taxation by the exercise of an illegal act.

In short, there rested upon this property liability for taxation. Thereafter, contrary to the statute, this property was acquired by the church; the church in virtue of its illegal acquisition, sought to make its illegal act the basis of immunity from contributing to paying for the law's protection.

With deference, no such suit ever came unwhipped of justice. This assertion of a right is precisely similar to the accounting filed for the profits made upon Hundlow Heath.

The Methodist Church case in Meridian is exactly properly decided and is supported by two decisions cited in our original brief, and should be in all things reaffirmed.

ANDERSON, J., delivered the opinion of the court.

This is an appeal by R. B. Gunter, representing the Baptist churches of this state (who for convenience will be referred to as the Church), from a judgment of the circuit court of the first district of Hinds county in favor of the city of Jackson, the appellee, for city taxes on a storehouse and lot owned by the Church in the said city. It is property which under section 934, Code of 1906 (section 4110, Hemingway's Code), prescribing what property a religious society or congregation or ecclesiastical body may own, the Church has no right to own. Exemption from taxes is claimed under section 4252, Code of 1906 (section 6883, Hemingway's Code), which provides, among other things, that all property, real and personal, and the revenues derived therefrom, belonging to any religious society, where the revenues thereof are "used for fraternal and benevolent purposes," shall be exempt from all taxes. It is argued on behalf of the Church that the question whether it can legally own the property involved cannot be raised

in this case by the city; that it is a question which can
be raised by the state alone in a direct proceeding insti-
tuted by the state for the purpose of escheating the title,
and that as to all except the state the title of the Church
cannot be questioned.   This identical question was involved
in *Baptist Church* v. *Boston,* 204 Mass. 28, 90 N. E. 572,
in which case it was held that the question of the right of
the church to own the property sought to be taxed by the
state, county, and municipality could be raised in the tax
proceedings.   The Massachusetts court had previously de-
cided in *Hubbard* v. *Worcester Art Museum,* 194 Mass.
280, 80 N. E. 490, 9 L. R. A. (N. S.) 689, 10 Ann. Cas.
1025, that, where a charitable organization in that state
held property in excess of that allowed by statute, the state
alone, in a proceeding for that purpose, could take advan-
tage of such irregularity; as to all others the title was
unassailable.   And that principle was reaffirmed in *Bap-
tist Church* v. *Boston, supra,* but the court held in the
latter case that the levy and collection of taxes was a pro-
ceeding by the state in which the state had a right to raise
the question whether the property sought to be charged
with taxes was legally owned by the Church.   The court
said:

"The question at once arises whether, under a system
that provides for the taxation of all property, unless an
exemption is created by statute and is plainly established,
the general law invoked by this complainant can be held
applicable to create an exemption in favor of a party whose
holding is *ultra vires,* and in excess of the authority given
by its charter.   This exemption is claimed against an assess-
ment for city, county and state taxes.   The claim is made
against the public authorities representing the state.   We
are of opinion that a party, asking an exemption of his
property under this general statute, must come as an
owner who has a title which the state is bound to recog-
nize.   A corporation, which as against the state has no
right to hold such property, is not in a position to claim a
statutory exemption which is intended only for a holding

fully authorized by law. We are of opinion that this complainant, under the limitations of its charter, has no standing, as an owner of this large amount of property, to ask for the application of this general law."

That the state alone can question the title to land held in contravention of its public policy is founded on the principle that the question is a public one; that there is no injury except to the public, and therefore the state and no one else is concerned. It is true that the taxes sought to be collected in the present case are not state taxes, but municipal taxes. This, however, does not prevent the application of the principle referred to. A municipality is only a subdivision of a state, as is a county, and the assessment and collection of taxes by a municipality is as much a proceeding on behalf of the public as a like proceeding in the name of the state for the collection of its taxes. In other words, this is a case where a political subdivision of the state is raising the question as to the right of the church to own this property. It is true the question is incidentally and not directly raised, but that can make no difference in principle. The state in its sovereign capacity is seeking to collect its public revenues, and is met by the Church, not with a claim of exemption, but the defense is that the state must recognize the right of the Church to own the property so long as it does not see fit to escheat it. *All* property is taxed in this state except that expressly exempted. We simply hold that in a proceeding by the state or any of its political subdivisions to fix or enforce a tax charge against property, whose liability therefor depends on whether the title is held in violation of the public policy of the state as declared by its statutes, it is competent to show that the title is so held, and that the public revenues do not have to await a proceeding by the state to escheat the title to such property.

Although this question was not discussed in the opinion of the court in *Methodist Church* v. *Meridian*, 126 Miss. 780, 89 So. 650, the court necessarily held that property owned by a church in excess of the amount it could hold under the law was subject to taxation. The church con-

tends, however, that that case is in conflict with *Adams County* v. *Diocese of Natchez*, 110 Miss. 890, 71 So. 17. We are asked to either reconcile these cases or overrule the Meridian Methodist Church Case. In the opinion of the court in the latter case the Natchez Diocese Case was not discussed or referred to. The sole question considered and decided in that case was *not* whether the diocese held property it had no right to own under the law, but whether, conceding it had a right to own the property in question, was such property exempt from taxes under section 4252, Code of 1906 (section 6883, Hemingway's Code)? So far as anything appears to the contrary in that case as reported, it was assumed by both the court and counsel that the diocese had the right to own the property there involved. The court held that it was exempt because it came within the exemption provided for in the above section of the Code. On the other hand, in the Meridian Methodist Church Case we have a decision of this court squarely against the contention of the Church here.

Counsel have appeared in this case as amicus curiæ, asking the court to decide that the distinguishing feature between the Natchez Diocese Case and the Meridian Methodist Church Case is the fact that the property involved in the former case was held by an incorporated society, while in the latter it is held by a mere unincorporated church organization, and that a different rule should therefore apply as to the right of such societies to own property. However, that question is not involved in the present case, and we therefore decline to pass upon it until it is here for decision.

We therefore conclude that, where a church owns real estate which it is not entitled to own, under the laws of this state such property is subject to all taxes to which other property of like character owned by others is subject; and that in a proceeding to collect such taxes either by the state, county, or municipality, or other public taxing authority, the question of the right of the church to own the property sought to be taxed can be raised.

*Affirmed.*