GULF & S. I. R. Co. v. DRAUGHON *et al.*\*

(Division A.   Sept. 26, 1927.   Suggestion of Error Overruled Nov. 7, 1927.)

[114 So. 269.   No. 26491.]

1. TAXATION. *Power to assess all property of railroad company is in state tax commission; "taxes" (Laws 1918, chapter 138, sections 1-4).*

   Under Laws 1918, chapter 138, sections 1-4, state tax commission has power to assess for taxation all property of railroad company, including that not used in railroad business; "taxes," within concluding clause of section 4, providing that the taxes on real estate of railroads other than that forming part of the road shall not be extended on the rolls to be made by the commission, not meaning assessment.

2. TAXATION. *Constitution permits separate mode of assessment of all property owned by railroad having property in more than one county (Constitution 1890, section 112).*

   Constitution 1890, section 112, declaring that the legislature may provide for a special mode of assessment for railroads and railroad and other corporate property not situated wholly in one county, *held* to confer power to assess all property of railroad having property in more than one county.

ON SUGGESTION OF ERROR.

3. TAXATION. *State tax commission having assessed hotel as railroad property, city cannot claim right to assess on ground that company had no right to own it.*

   The state, through its tax commission, having assessed for taxation a hotel as property of a railroad company, thus in effect recognized right of the company to own the property, a city in suit to enjoin it also from assessing it, cannot raise the question of right of the company to own it, and thus the question of right of the state commission to assess it as property of the company.

\*Corpus Juris-Cyc. References: Taxation, 37Cyc, p. 947, n. 36, 37; p. 1036, n. 4; p. 1133, n. 13.

APPEAL from chancery court of Forrest county.

HON. T. P. DALE, Chancellor.

Suit by the Gulf & Ship Island Railroad Company against M. T. Draughon and others. From an adverse

148 Miss.—28.

decree, complainant appeals. Reversed and decree rendered.

*T. J. Wills,* for appellant.

The constitution allowing the legislature to provide for a separate assessment of railroads and other public service corporations, by section 112 thereof, placed the assessment of railroads in very much the same situation as the banks are placed by the provisions of section 181 of the Constitution. The assessments of railroads by railroad assessors was not a new question at the time of the adoption of the Constitution of 1890. By section 597, Code of 1880 (sections 597 to 602, inclusive) the auditor of public accounts, the treasurer and the secretary of the state were constituted the assessors of railroads for the state of Mississippi. Under the Constitution of 1890 permitting the legislature to provide a special mode for valuation of railroads, the legislature constituted the members of the railroad commission as state railroad assessors. Sections 3875-3886, inclusive, provided for the assessment of railroads and other public service corporations. The Code of 1906, in section 4382-4393, inclusive, provided for the assessment of railroads, continuing the railroad commission as the state railroad assessors. By chapter 138, Laws of 1918, however, the legislature saw fit to constitute and make the state tax commission the state assessors of railroads and other public service corporations. The state tax commission assessed the property of the Gulf & Ship Island Railroad and filed the assessment with each county of the state, as required by law, for the taxing year 1924.

It is further shown that the city property assessed for municipal taxes is generally assessed at forty per cent more than the same property was assessed for state and county purposes. The city had been applying to the state tax commission to place this additional valuation upon the property of the railroads within the City of Hattiesburg and the state tax commission had been complying by so placing the additional valuation. The N. O.

& N. E. Railroad had contested this assessment and was not paying the taxes thereon. The state railroad assessors, the state tax commission, had ceased to apply the additional forty per cent for municipal purposes and the city had made its separate assessment so as to obtain this increased value.

This court held in *City of Hattiesburg* v. *N. O. & N. E. R. R. Co.*, 141 Miss. 497, 106 So. 749, that property owned by railroad companies is assessed for *ad valorem* taxation by the state, counties, municipalities and other taxing districts by the state tax commission, and the assessments must set forth the true value of such property, and the commission is without power to assess such property at one value for one taxing district and at another value for another taxing district; for one of such valuations would, of course, not be true, and, consequently, would violate both the statute and the Constitution. The court held that the increase in the assessment for municipal purposes, situated within the city of Hattiesburg, was void. Under the authority of this case the city was without power to make the separate assessment and the assessment was void. See *Y. & M. V. R. R. Co.* v. *City of Vicksburg*, 49 So. 185, 95 Miss. 701.

The decree of the chancery court dissolving the injunction in part and decreeing the payment of taxes in the sum of one thousand four hundred twenty-two dollars and fifty cents and ten per cent statutory damages thereon, or a sum total of one thousand five hundred sixty-four dollars and seventy-five cents, was erroneous as to each and every item thereof. We submit that the case should be reversed and a decree entered here.

*D. E.* and *C. W. Sullivan*, for the appellees.

This suit raises a question of law as to whether the state tax commission could assess the hotel and the Fabacher lot along with the railroad, or whether the hotel and the Fabacher lot were subject to local assessment by the city of Hattiesburg. The state tax commission attempted to assess this property under chapter 138,

Laws of 1918. We submit that this chapter gave the state tax commission no such authority.

The legislature of 1926 undertook to make its meaning clear in this regard and to this end adopted chapter 127, Laws of 1926, and amended sections 4, 8, and 10 of chapter 138, Laws of 1918, and substituted for the concluding paragraph of section 4, chapter 138, Laws of 1918, the following: ". . . but other real estate belonging to railroads than that forming a part of the road or used in connection with its business shall not be assessed on the roll, but shall be assessed as other real estate is assessed by the tax assessor of the county where situated." We submit that if chapter 138, Laws of 1918, was intended, and is construed, to allow the state tax commission to assess the Hotel Hattiesburg and the Fabacher lot merely because the railroad owned them, such chapter 138, Laws of 1918, is unconstitutional and void, since it would be in conflict with section 112, Constitution of 1890, because that section does not authorize the legislature to adopt a law permitting the state tax assessors to assess local property situated wholly in one town or one county merely because it is owned by the railroad.

No one will seriously contend that a five-story hotel forms a part of a railroad or is necessary, or even can be used in the operation of the railroad. Section 112 and sections 135-138 of the Constitution, considered together, make the assessment of the Hotel Hattiesburg by the state tax commission unlawful. These sections taken together, mean that the legislature may provide a special mode of valuation and assessment for certain property lying in two or more counties, and sections 135-138 mean that all other property than that covered by section 112 shall be valued and assessed by the county tax assessor, and that the legislature cannot provide any other method of assessing such property. This proposition has been clearly settled in this state. See *State Rev. Agt.* v. *Tonnela,* 70 Miss. 701.

The state tax assessors in assessing the Hotel Hattiesburg and the Fabacher lot have usurped the authority

of the county tax assessor. Words & Phrases (1st 'Ed.), 5912. The only property of a railroad that the state tax commission can assess is such property as is actually needed and used in operating the railroad, and all other property owned by a railroad must be subject to local assessment as the property of other persons is assessed.

County for the railroad company cites *City of Hattiesburg* v. *N. O. & N. E. R. R. Co.*, 106 So. 749, 141 Miss. 497, and says that under the authority of this case the city was without power to make the separate assessment and that such assessment was void. The above case cited by counsel settles the question that the state tax commission cannot assess railroad property in a city forty per cent higher for municipal taxes than it is assessed at for state and county taxes.

In the instant case the city of Hattiesburg, acting under the law, made its own assessment on railroad property which was not a part of the road and not used in operating the railroad; namely, a five-story hotel, all of the fixtures and furniture in the hotel, a vacant lot known as the Fabacher lot, and the power house. This was all the property of the railroad company that the city of Hattiesburg undertook to assess. In assessing this property it denied, and still denies, the right of the state tax commission to assess it. Counsel also cites the case of *Y. & M. V. R. R. Co.* v. *City of Vicksburg*, 49 So. 185. We are at a loss to know why counsel cites this case, for a glance would show that this has no application to the case at bar.

Of course, in the instant case, the city of Hattiesburg made no attempt to assess the property of the railroad which the statute and Constitution authorized the state tax commission to assess, but the city of Hattiesburg did assert the right to assess the property of the railroad that formed no part of the railroad and was not needed or used in its operation. This property being the five-story hotel, its furniture and fixtures, and the vacant lot abutting it. The railroad has no more right to have this property assessed by the state tax commission than it would a store or a chain of stores, or a cattle ranch or farm.

Argued orally by T. J. Wills, for the appellant, and D. E. Sullivan, for the appellees.

McGOWEN, J., delivered the opinion of the court.

The appellant here, complainant in the court below, filed its bill in the chancery court of Forrest county, seeking to enjoin a separate assessment of its property in the city of Hattiesburg for the year 1924, and alleging that such property had been duly assessed under the statute by the state tax assessors, the tax commission, for that year, and that the city of Hattiesburg had doubly assessed said property by accepting the assessment rendered by the state tax commission and, in addition thereto, separately assessing the same property. The property in controversy, which we shall refer to as the Fabacher lot, the power house, and the Hotel Hattiesburg, is fully described in the bill. The bill alleged the payment of these taxes, and sought an injunction against the collection, by the city authorities, of additional taxes other than the amount fixed on the above property by the state tax commission. The defendant, the city of Hattiesburg, by its authorities, answered this bill of complaint, denied that the tax had been paid, and denied the right of the state tax commission to assess the Hotel Hattiesburg, the Fabacher lot, and the power house.

On the proof, the record discloses that the Gulf & Ship Island Railroad Company built the Hotel Hattiesburg about the year 1904 or 1905, and that it was owned by the railroad company until October 28, 1908, when the railroad company sold and conveyed the hotel property to Capt. J. T. Jones by deed recorded on December 10, 1908. In the deed the railroad expresssly reserved to itself, its successors and assigns, the exclusive and uninterrupted right to the use of so much of the property and premises as at the time of the deed was occupied as a passenger station by the railroad, which reservation was accurately described in the deed. It was further stated in the deed that:

"The above-described floor space now occupied by said station and hereby expressly reserved as aforesaid unto the said railroad company containing an area of about two thousand nine hundred square feet, including herein what are known at the present time as the ladies' waiting room, white waiting room, ticket office, negro waiting room, and baggage room."

After this J. T. Jones conveyed to the Great Southern Hotel Company all the aforesaid property, reserving to the railroad company the right reserved by it in its deed to him. Subsequently Mrs. Grace Jones Stewart acquired this property, and on July 31, 1922, conveyed it to the railroad. The deed, however, was not filed for record until February 20, 1926.

The proof further showed that about one-third of the ground floor of the hotel was used by the railroad company; that the railroad company was engaged in operating the hotel and in renting stores in the power house in 1924; that, on the first floor, the hotel had a large dining room and barber shop, and a large lobby for hotel purposes; that there were five floors in the building, four above the first floor, and these four upper floors were divided into rooms for the accommodation of guests; that the Fabacher lot was a grass plot or flower garden connected with the hotel property and alongside of the railroad property; that the power house was occupied in the main by railroad officials; that there was also in it machinery for the operation of an electric light plant by which the hotel and railroad property was lighted, and there were some stores in the same rented to parties for mertantile business.

The chancellor, on hearing the case, rendered a final decree denying the right of the state tax commission to assess the Hotel Hattiesburg and the Fabacher lot, but upheld the assessment by the commission on the power house. The decree recites that the valuation placed on the property by the state tax commission (that is, on the Hotel Hattiesburg, the power house, and the Fabacher lot, is one hundred twenty-three thousand dollars), and

the valuation placed on this same property by the municipal assessment is one hundred sixty-seven thousand dollars; that the valuation placed on the furniture and fixtures of the Hotel Hattiesburg by said commission is sixteen thousand dollars, and the valuation placed by the city of Hattiesburg on same thirty-seven thousand two hundred fifty dollars, leaving a difference of twenty-one thousand two hundred fifty dollars.

The decree further recited that the railroad company had paid the taxes due the municipality according to the assessment made by the state tax commission, and, if the claim of the municipality to make such local assessments for the year 1924 was upheld by the final decision of the court, then the railroad company should pay taxes on the differences in the assessed values by the state tax commission and the city of Hattiesburg, at the rate of twenty-four mills on the dollar, on the total difference of sixty-five thousand two hundred fifty dollars, or a total tax to be paid by the railroad company of one thousand five hundred sixty-six dollars and fifty cents, in addition to the sum paid in under agreement. The court found that the power house was not subject to additional assessment by the city of Hattiesburg, and deducted the amount of the tax thereon, one hundred forty-four dollars, leaving one thousand four hundred twenty-two dollars and fifty cents, taxes which the court adjudged the railroad company should pay to the city of Hattiesburg. In addition to the above, the court adjudged a penalty of ten per cent. against the railroad company, sustained the injunction, and perpetuated the same against the city of Hattiesburg as to the local assessment on the power house, and dissolved it as to the local assessment on the Fabacher lot and the Hotel Hattiesburg.

The question for decision here presented is: Have the state tax assessors (now the tax commission) the power to value or assess for taxation the property owned by a railroad company which is not used in railroad business, or incident or auxiliary thereto?

Clearly the legislature, since the year of 1880, has conferred this power on the body designated by it as the state tax assessors. See section 597, Code of 1880; section 3875 *et seq.,* Code 1892; section 4382 *et seq.,* Code 1906; and Laws of 1918, chapter 138. Under the last-named chapter, which lodges the power of the state tax assessors in the state tax commission, there is clear, unequivocal language vesting the power of all the property owned by railroads in the state tax assessors; i. e., the state tax commission. Section 1 of said act provides that said state assessors of railroads shall assess the property of railroad, telegraph and other companies. Section 2 requires the companies mentioned, including railroads, to return schedules which describe and detail the various kinds of railroad property, and uses the following definite language:

"All real, personal or mixed property belonging to the company within the state, not enumerated, with its value."

Section 3 provides the penalty for failing, neglecting, or refusing to render the schedules for purposes of assessment for taxation. Section 4 provides when the state assessors shall make up the assessment rolls of the described companies, both real and personal, and permits them to prescribe the forms as near in conformity to ordinary assessment rolls as convenient and practicable, the property in cities, towns, and villages, separate school districts, and levee districts, being distinguished; and provides further that the same shall contain all the property of any such company or other railroad property in the county, and the value thereof and the state taxes thereon; and provides further that the assessment rolls, when made, shall remain on file for one month in the office of the state tax commission, and be for said time subject to the objections thereto which may be filed; and concludes with this statement:

"But the taxes on other real estate belonging to railroads than that forming a part of the road, shall not be extended on the rolls."

The language is so plain and the purpose of the legislature so obvious that discussion is rendered unnecessary, as it is very evident that the legislature conferred the power to assess all the property of a railroad upon the state tax assessors. It is significant that the concluding clause, quoted above, was changed by the legislature by chapter 127, Laws of 1926, in this material particular:

"But other real estate belonging to railroads than that forming a part of the road, or used in connection with its business, *shall not be assessed* on the rolls, but shall be assessed as other real estate is assessed by the tax assessor of the county where situated." (Italics ours.)

Counsel for appellee contends that the concluding clause of section 4, chapter 138, Laws of 1918, simply means that the state taxes required to be placed on the roll were state taxes on property which the state tax commission had the right to assess, and that its language is in aid of his contention, and that under said chapter the state tax commission was without power to assess property belonging to the railroad other than that which formed a part of the railroad. We cannot adopt this view, because we must take the whole section together, and the state tax commission was specifically directed to assess the value of all property of a railroad. This clause has reference only to the extension of the taxes due the state; and, while we are not called upon now to say just why the legislature added this clause, it may be that it was done as a matter of bookkeeping in order to preserve the distinction between railroad property as such, and the property owned by the railroad. However that may be, the word "taxes" cannot be distorted into meaning assessment, as the two are entirely different.

Counsel for appellee next insists that, if chapter 138, Laws of 1918, *supra,* confers the power on the state tax assessors to assess all the property of a railroad, including that which is not used as railroad property, then the act is unconstitutional and void, and violative of section

112 of the Constitution, and insists that said section confers upon the legislature the power only to provide a special mode of valuation and assessment of such railroad property lying in two or more counties as forms a part of the road actually and necessarily used in the operation of the road. Sections 135 and 138 of the Constitution are cited as providing for tax assessors for each county of the state.

Section 112 of the Constitution is as follows:

"Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. The legislature may, however, impose a tax *per capita* upon such domestic animals as from their nature and habits are destructive of other property. Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations and situated wholly in one county. But all such property shall be assessed at its true value, and no county shall be denied the right to levy county and special taxes upon such assessment as in other cases of property situated and assessed in the county."

And the careful reading of this section demonstrates that power is conferred upon the legislature to provide a special mode of valuation and assessment for railroads, *and railroad and other corporate property.*

We do not think the framers of the Constitution intended to limit the power of the legislature therein by the use of the words "railroad and other corporate property," provided the property of the corporation or association was situated in more than one county of the state. The words "other corporate property" broadens rather than limit the meaning of that which has gone before; and we think that the legislature, since 1890, has correctly interpreted section 112 of the Constitution as permitting it to provide a separate mode of assessment

of all property owned by a railroad having property in more than one county. We think the view suggested by counsel is too narrow and restrictive; and we cannot say that this chapter 138 is unconstitutional, because it confers the power to assess the property owned by a railroad, as well as railroad property, upon the state tax assessors. This is not apparent; nor can the construction contended for by counsel for appellee of section 112 of the Constitution be deducted from the broad language quoted.

In view of this conclusion, and the railroad company having paid all taxes assessed against it by the state tax assessors and the city of Hattiesburg, the authorities of said city were without authority to assess the same property further. We think the injunction should have been made perpetual against the collection of further taxes on the Hattiesburg Hotel, the Fabacher lot, as well as the power house; and, the court having erred in this behalf, the injunction is made perpetual as to the taxes on said property for the year 1924.

*Reversed, and decree here for appellant.*

ON SUGGESTION OF ERROR.

COOK, J.

On a former day this cause was reversed, and judgment was entered in this court in favor of the appellant, and the appellees have filed a suggestion of error, in which it is urged that the reversal of the decree of the court below was erroneous for two reasons:

"First. Because the result of the holding is that if a railroad owns some property (not a part of the railroad) situated in more than one county, and owns some other property (not a part of the railroad) situated wholly in one county, the property situated wholly in one county shall be assessed by the state tax assessor, merely because the railroad owns some other property, not of the same species, not situated wholly in one county. This holding causes a conflict between section 112 and sections 135 and 138 of the Constitution.

"Second.  The railroad has no right under its charter to own the Hotel Hattiesburg, and therefore the state tax assessor could not assess it."

The first point presented by counsel on this suggestion of error was argued at length in the original brief of counsel and is fully discussed in the opinion of the court, and we do not deem it necessary to add anything to the discussion of this point.  The second point now urged by counsel does not seem to have been made, or, if made, was not pressed at the original hearing.

Counsel now cites many authorities to establish the proposition that, under its charter, the railroad company has no right to own the Hotel Hattiesburg, a hotel that is devoted to the accommodation of the general public, and in support of the asserted right of the appellee to contest, in this proceeding, the right of said company to own the hotel, they rely on the case of *Gunter* v. *City of Jackson,* 130 Miss. 686, 94 So. 842, 27 A. L. R. 1043.

In the Gunter case the church was asserting the right to an exemption from all taxes on property which it had no right to own, for the reason that there had been no proceeding by the state to escheat the title to such property.  One asserting an exemption from taxation must clearly establish his right thereto, and in the Gunter case the court quoted with approval the language of the Massachusetts court in the case of *Baptist Church* v. *Boston,* 204 Mass. 28, 90 N. E. 572, that:

"A party, asking an exemption of his property under this general statute, must come as an owner who has a title which the state is bound to recognize," and "a corporation, which as against the state has no right to hold such property, is not in a position to claim a statutory exemption which is intended only for a holding fully authorized by law."

Exemptions from taxation are granted by the state, and in the Gunter case the church was asserting or claiming an exemption which was based upon its own wrong in holding property which it was not authorized by law to own, and the court held that:

"In a proceeding by the state, or any of its political subdivisions, to fix or enforce a tax charge against property, whose liability therefor depends on whether the title is held in violation of the public policy of the state, as declared by its statutes, it is competent to show that the title is so held, and the public revenues do not have to await a proceeding by the state to escheat the title to such property."

In the case at bar the railroad company is asserting no right to an exemption from taxation on the property involved. It is merely asserting that it has been once assessed on this property by officers of the state who were authorized by law so to do. By assessing this property for taxation as the property of the railroad company, the state, through its officers, has so far, in effect, recognized the right of the company to own the property. This proceeding in effect calls in question the respective rights of the state and local taxing authorities. The state in its sovereign capacity has exercised its authority to assess this property as the property of the railroad company, and we do not think that a political sub-division of the state can, in this proceeding, raise the question of the right of the company to own it. If, in fact, the railroad company has no right to own this property, the state can maintain proper proceedings to escheat the title, but upon the question of the right of the company to own this property we express no opinion.

The suggestion of error will therefore be overruled.

*Overruled.*