PHI BETA EPSILON CORPORATION *vs.* CITY OF BOSTON.

Suffolk. November 11, 1902. — January 8, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & HAMMOND, JJ.

*Tax*, Exemption.

The keeping of a dormitory and boarding house for students of the Massachusetts Institute of Technology by a literary or scientific corporation, other than the institute itself, is not an educational purpose within the meaning of Pub. Sts. c. 11, § 5, cl. 3, exempting from taxation the property of such a corporation used for an educational purpose. And if some literary or scientific work is done in the building, this does not change the result, if the dominant use of the building is for a dormitory or boarding house.

CONTRACT for money had and received for taxes paid under protest alleged to have been assessed illegally on real estate of the plaintiff on May 1, 1901. Writ dated January 29, 1902.

In the Superior Court the case was heard by *Mason*, C. J., who refused to rule as matter of law that the plaintiff was entitled to recover. He found for the defendant, and by agreement of parties reported the case for determination by this court. If the ruling requested should have been made, judgment was to be entered for the plaintiff in the sum of $327 with interest from January 7, 1902; otherwise, judgment was to be entered for the defendant.

The facts stated by the report were as follows: The real estate in question consisted of a lot of land on Beacon Street in Boston with a house thereon containing about eighteen rooms, to which the plaintiff acquired title by deed on April 30, 1901. The amount paid for the property was contributed by graduates of the Massachusetts Institute of Technology. The plaintiff corporation was organized in 1896 under Pub. Sts. c. 115. The purpose of the corporation, expressed in its certificate of incorporation, " is to encourage and pursue literary and scientific work, and to provide for its members a place for holding literary and scientific meetings, and to provide for its members, while they shall continue to be students, a place for study." Article 3 of the by-laws provides that active members shall be students

who are members of the Phi Beta Epsilon Fraternity of the Massachusetts Institute of Technology, and that active membership shall cease upon a member ceasing to be a student at the Institute of Technology.

The building and rooms were arranged and furnished for the purpose of being used as dormitory, kitchen, dining room, rooms for study, receptions and lectures, and one large room for a library. The library consisted principally of scientific books, among the rest upwards of a thousand volumes formerly owned by the late General F. A. Walker, the former president of the institute, and given to the plaintiff for its use by his widow. The building was used exclusively by students of the institute, for the above purposes, for meetings for debating and the practice of parliamentary law, for lectures, and for the reading of essays on literary and scientific subjects. Receptions occasionally were given, which were attended by the president and members of the faculty of the institute; and members of the faculty and others gave lectures from time to time to the students, but these lectures did not constitute any regular part of any course of study established by the institute.

The property was not occupied on May 1, 1901, but was purchased with the purpose of removal thereto, and was first occupied by the corporation in the autumn of 1901. One person, a graduate of the institute of some years standing, was appointed by the corporation to lodge at the building for the purpose of exercising a general oversight over the property and the conduct of the students in possession of it, and with a view of exercising such beneficial influence on the students as naturally would be exercised upon them by a person of more mature years. The amount paid by the student members to the plaintiff corporation for the use of the building was fixed at such amount as should be necessary to maintain the building and pay the interest on incumbrances. No income or profit was divided among the members. The student members had entire charge of furnishing food and servants and of managing the building, and the expenses were assessed upon and paid by the active members who enjoyed the privileges of the house at cost. The plaintiff corporation did not itself provide any teachers or instruction, except to the extent and in the manner above mentioned. It was ad-

mitted that the Massachusetts Institute of Technology is a literary and scientific corporation.

*F. T. Benner*, for the plaintiff.

*A. L. Spring*, for the defendant.

HAMMOND, J.   The judge before whom this case was tried may have found properly upon the evidence that, even if the plaintiff was a literary or scientific corporation within the meaning of Pub. Sts. c. 11, § 5, cl. 3, and even if some literary or scientific work was done in the house in question, still the building was also used as a dormitory and boarding house for students of the Massachusetts Institute of Technology, and that this last was the dominant use, or, in other words, that this in substance was a boarding house for certain students of that institution.

If that finding was made, we think that the judge rightly declined to rule, as matter of law, that the property was exempt from taxation.   It is true that in many cases an educational institution may provide for the physical wants and comfort of its own students, where such provision is reasonably necessary or convenient for the full enjoyment of the educational advantages offered by it to them, and to that end it may build and occupy dormitories, dining halls and other similar buildings, furnish the same for use, and buy, prepare and distribute food. Sometimes it may go even further, and set aside a portion of its real estate to be cultivated as a farm upon which to raise articles of food.   All its real estate occupied by it for such purposes, and its personal property used in connection therewith, may be exempt from taxation.   *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599.   *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139. *Harvard College* v. *Cambridge*, 175 Mass. 145.

But the housing or boarding of students is not of itself an educational process any more than is the housing or boarding of any other class of human beings.   The nature of the process, so far as respects its educational features, is not determined solely by the character of those who partake of its benefits. Suppose a number of students of the Institute of Technology should conclude to provide lodging and board for themselves on some co-operative plan, and for that purpose should buy and occupy a house not in any way connected with the grounds or property of the institution, could it be said that such a house

was used for an educational purpose? Suppose again, that these students were incorporated for the purpose of providing board and lodging for themselves and others while students, could it be said that the use of the real estate for such purposes was an educational process?

The trouble with the plaintiff's case is that the property may have been found, as above stated, to have been used as a dormitory or boarding house, that this was the dominant use and was in no way necessary or convenient for such slight and incidental educational or scientific instruction as was furnished by the plaintiff, and therefore was in no proper sense a part of, or merely incidental to, such instruction.

The principles governing this and similar cases have been so thoroughly and recently discussed by this court that it seems unnecessary to do more than refer to certain cases. See in addition to those hereinbefore cited, *St. James Educational Institute* v. *Salem*, 153 Mass. 185; *Phillips Academy* v. *Andover*, 175 Mass. 118; *Salem Lyceum* v. *Salem*, 154 Mass. 15.

*Judgment for the defendant.*