CENTRAL METHODIST CHURCH *v.* CITY OF MERIDIAN *et al.*

[89 South. 650, No. 21916.]

TAXATION. *Property which religious society cannot lawfully hold held not exempt from taxation.*

In construing statutes all statutes in *prima materia* are considered, and taking section 4252 Code 1906 (section 6883, Hemingway's

Code) and section 934, Code 1906 (section 4110, Hemingway's Code), together, it is manifest that the legislature did not intend to exempt from taxation, in favor of a religious society, property which it could not lawfully hold. The legislative intent was to exempt such property as such society could lawfully hold.

APPEAL from chancery court of Lauderdae county.

HON. G. C. TANN, Chancellor.

Bill in chancery by the trustees of the Central Methodist Church to enjoin the City of Meridian and the Tax Collector thereof from collecting taxes on property alleged exempt. Judgment for defendants, and the plaintiff appeals. Affirmed.

*Thomas L. Bailey, S. M. Graham,* and *R. F. Cochran,* for appellant.

We submit to the court that appellee even granting (and we do not) that apepllant is holding property in violation of the law, is pursuing the wrong course. There is a well defined method ordained by law, whereby corporations may be penalized or punished for violating the property holding laws of the state. That method is the law of escheats. The state, under our system of administering law, is the sole and only judge of when this law or policy of government is violated. The state is the only being that invokes this remedy. Otherwise, every corporation, charitable or corporate business holder of property would be the target of suits by Tom, Dick and Harry, seeking to pnalize them. The state is the keeper of its own conscience, and we respectfully submit that the appellee has rushed in and attempted to start something in a matter with which it has no right or concern. The state is the judge of whether or not its policy is being trampled under foot; it, and it alone, is armed with the power to defend itself. In the case of *Farrington et al.* v. *Putnam, et al.,* 38 L. R. A. 339, Chief Justice PETERS rendered a clear and conclusively sound opinion touching this proposition. In discussing the mat-

ter of the holding of property in excess of the amount fixed by statute, he says: "Certain things are *ultra vires* of a corporation; but when it has the power to hold property and is forbidden to hold beyond a certain amount, the matter being one of degree merely, or of more or less, this is not a question of *ultra vires,* but of violation of its charter. A contrary rule would involve many absurdities (the court here stated some of them). The corporation may be amendable to the penalty of violating its charter. Individuals cannot call it in question; its tenants must continue to pay its rents and is debtors their debts; the state alone has the right to proceed against it. The state may or may not see fit to do so. It would depend on the circumstances of the case, the greatness of the excess, the causes which led to it, etc., the state may condone the offence. The legislature may relieve by enlarging its powers. The late Justice Bradley was far famed as an original thinker, and his idea, that if the contrary rule prevailed, the corporation could never be punished for accepting a bequest which gave it property above the limit allowable, because it could defend upon the ground that the bequest was completely void, is certainly original and forceful." Numerous cases are cited and discussed in this great opinion.

In this state, although taxation is by many regarded as grievous and highly punitive, the policy of the state has never been to punish wrongdoers by the imposition of taxes. If appellant has done any wrong and is answerable to any one as a consequence of its dealings with its property, it has violated the land holding laws of the state and is answerable on this charge alone, and the state alone must call it to task. This property under the laws of the state, is exempt from taxation. Its right to hold property is a matter between it and the state. It is a question of whether or not, in view of all the circumstances, it has violated or infringed upon the rights of the state. The state by failure to act, has recognized the justice and the right of its conduct in holding said property. Appellee can have no "kick."

We respectfully submit that in the light of the record in this case, the decision of the lower court should be reversed and judgment, in accordance with the prayer of appellant's bill, entered here.

*Amis & Dunn,* for appellee.

The reason why the church is holding the property is not material on the question as to whether or not property actually held by it in excess of its power to hold such property is taxable. The sole question here is as to the proper construction of section 4252 in the light of section 934 under the peculiar facts of this case.

The identical question here under consideration was considered by the supreme court of New Jersey in the case of *State* v. *Atlantic City,* reported in 48 Atl. Rep. at page 242, which was affirmed by the appellate court in an opinion reported in 59 Lawyers Report Annotated at page 947. In that case it was held that property acquired and held by a charitable society in excess of its charter powers, was not exempt from taxation under a general statute of New Jersey exempting property devoted to charitable purposes from taxation.

The case of *Farrington* v. *Putnam,* reported in 38 L. R. A. at page 339, is not in point, and has no bearing whatever on the issues in this cause. In that case Farrington made a will by which he devised certain property to a charitable society, which property when added to that which the society already owned, was in excess of the value of the property which the charitable society was authorized by its charter to own; and the heirs at law of Farrington were contending that the bequest was void, and that the property descended to the heirs at law. We make no such contention here. We do not contend that Central church has no title to the property here in controversy. On the contrary we admit that it has title, and that it can pass that title to another by a conveyance; we also admit that no one can complain of the fact that it has acquired this prop-

erty in excess of its corporate powers except the state; and that even if the state did complain, that it could not escheat the property but could only dissolve the corporation and wind up its affiairs. But the exact question presented here is whether or not under the provisions of section 4252 construed in the light of and in conjunction with section 834, the church can hold the property in controversy in excess of its charter or statutory powers, and at the same time claim an exemption from taxation. This exact question has never been decided by this court, and so far as we have been able to find, has never been decided by any court in any case, except the New Jersey case above cited.

If the contention of the appellant be sound, then a church might take title to large tracts of valuable real estate in excess of its lawful authority, and gain exemption from taxation, both state and municipal, to the detriment of the public revenue. We submit that the true intent and meaning of section 4252 is to exempt from taxation all of the property, real and personal, lawfully owned by or belonging to any religious or charitable society; and that it was not intended by the legislature to exempt from taxation any property acquired, or held by a religious, or charitable society in excess of its lawful powers to take and hold the same.

The point here under consideration was not made or considered in the case of *Adams County* v. *Catholic Diocese,* 71 So. at page 17.

We respectfully submit that the decree of the court below ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The trustees of the Central Methodist Church in Meridian filed a bill in chancery to enjoin the city of Meridian, a municipal corporation, and the tax collector thereof from collecting taxes upon certain described property belonging to the appellant, alleging that the appellant is a religious society and that by section 4252, Code of 1906, all of its

property, real and personal, and the revenues derived there-from are exempt from taxation. It further alleged that all of the property was church property held exclusively for church purposes and had never been used otherwise. It further alleged that the said property was unlawfully assessed and that the defendants were demanding one hundred and eighty-seven dollars taxes thereon, and unless restrained from so doing would sell the property for said taxes.

The defendant denied that the property described in the bill was acquired exclusively for church purposes, and denied that the said property had never been used by the church for other purposes, and denied that the tax was unlawfully assessed, but admits that it was assessed for taxation at the valuation alleged in the bill.

The answer further set forth that said church owned other property in said city upon which was situated a house of worship and a parsonage or residence for its pastor, and that the property involved in the suit is a parcel of vacant ground separate from the above property and in no wise appurtenant one to the other, but, on the contrary, widely separated. It admits that the church and the lot upon which it is situated is exempt from taxation and that they have not sought to collect any tax thereon.

The answer then says:

"(9) Said defendant would further show and state to the court that by section 934 of the Mississippi Code of 1906, it is provided as follows:

"934.  The Same; May Own Only Certain Property.— Any religious society or congregation or ecclesiastical body may hold and own, at any one place, the following real property, but no other, viz.:   (a) A house or tenement for a place of worship; (b) a house or tenement for a place of residence for its pastor or minister; (c) a house or tenement appropriated and used as a school or seminary of learning for males; (d) and another house or tenement to be appropriated and used as a school or seminary of learning for females; with proper and reasonable quantity of

ground, in each instance, thereto attached; and (e) a ceme-
tery of sufficient dimensions. (f) Any religiuos denomina-
tion may, in addition, own such colleges or seminaries of
learning as it may think proper, and (g) a place or resi-
dence for its local clergyman in charge."

"(10)    Said defendants further show that no part of
the property mentioned in the bill of complaint is devoted
by said church to any of the purposes mentioned in said
section 934, nor is it the purpose or intent of said church
ever to devote the said property, or any part thereof, to any
of the purposes mentioned in said statute. And these de-
fendants say that the exemption contained in section 4252
of the Mississippi Code of 1906, referred to in the bill of
complaint, was intended by the legislature to apply to only
such property of religious and charitable societies as might
be lawfully owned and held by them, and that the true con-
struction, intent, and meaning of the said statute 4252 of
the Mississippi Code of 1906 is as above stated."

There was an agreed statement of facts in which it was
agreed between the parties: That during and prior to the
year 1913 the appellant owned a house of worship and the
land on which it was situated on the northwest quarter of
block 84, Ragsdale survey, in the city of Meridian, and the
parsonage and ground on which it was situated on the
southeast quarter of block 9 of the Ragsdale survey, and
during the year 1913 the church building was destroyed by
fire. That early in the following year the church authori-
ties decided to sell its old church site and parsonage and
the land on which they were situated and to purchase a
new site for both on the southeast quarter of block 64,
Ragsdale survey, and that said parsonage and church and
lots were sold to different persons. That a part of the
property so sold was paid for, but one of the parties buying
a portion of the land failed to make payment therefor and
that the property was reacquired in satisfaction of the
debt. That during 1914 the church bought lots 3, 4, 5, 6, 7,
and 8 of block 64, Ragsdale survey, as a new site for the
church and parsonage and that the property was conveyed

to the trustees, but nothing was done toward building a church until 1917, when a different piece of property was purchased, and that in 1918 buildings were begun in block 43 of Ragsdale survey and a church building completed and is occupied as a house of worship. That in 1919 the church authorities purchased a site in the northeast corner of block 157 of Ragsdale survey and thereupon sold lots 3 and 4 of block 64 of Ragsdale survey, which had formerly been a parsonage site. So on February 1, 1920, the church owned four separate and distinct parcels of ground in the city of Meridian, namely, first, its church site and house of worship in block 43, Ragsdale survey; second, its parsonage site and residence in block 157, Ragsdale survey; third, lots 5, 6, 7, and 8 in block 65, Ragsdale survey; and, fourth, property in block 84, (Ragsdale survey; the last two pieces of property mentioned being vacant property and the first two pieces of property being marked exempt on the city assessment roll for the year. 1920. The property reacquired from Hyde, the purchaser, in block 84, Ragsdale survey, and lots 3 to 8, inclusive, in block 65, Ragsdale survey, was assessed for city taxes for the year 1919 and said taxes paid under protest. That during 1919 the church borrowed money to aid in its building operations and executed mortgages on the vacant property in block 65, Ragsdale survey, which mortgage is still held and unpaid and amount to approximately five thousand dollars. That the church paid four thousand dollars for lots 3 and 4, block 65, Ragsdale survey, in 1914, and sold the same property in June, 1919, for two thousand five hundred and fifty dollars. The church paid nine thousand two hundred and fifty dollars for lots 5, 6, 7, and 8, block 64, Ragsdale survey and that the balance due on the Hyde notes at the time of the reconveyance of the property in block 64, Ragsdale survey, was six thousand, seven hundred and fifty dollars. That since the early part of 1918 the church had been trying to sell the vacant property in block 64, and since March, 1919, had been trying to sell the vacant property in block 84, but has been unable to sell either piece without suffering great loss in

the price paid for the same, and has not received any offer
for either pieec of property at a price which the church
authoritoes thought fair and reasonable. That the church
has no intention of using either of the two pieces of proper-
ty in block 64 and block 84 of said survey, but is simply
holding the property until it can be sold at a fair price. That
as soon as the property is sold and the money realized there-
from it will be used by the church in paying its obligation
incurred by reason of its church building program, and
that all money borrowed on the property was used by the
church in building its new house of worship. It further
agreed that the two pieces of vacant property in block 64
and block 84 are not contiguous to each other, nor are
they contiguous to the parsonage site in block 43 nor the
church site in block 157, but both pieces are several blocks
distance from the church site and the parsonage site.

It will be seen from the statement of facts and agreed
facts that the property in question is not such property
as the religious society may own under section 934, Code
of 1906 (section 4110, Hemingway's Code).

It is the contention of the appellee that section 4252,
Code of 1906 (section 6883, Hemingway's Code), and sec-
tion 934, Code of 1906 (section 4110, Hemingway's Code),
are to be construed together, and when so construed that
the exemption will be defeated; that the exemption contem-
plated by section 4252, Code of 1906, is of such property
as the church may rightfully hold under section 934, Code
of 1906.

The appellants contend that section 934, Code of 1906,
does not modify or limit the exemption contained in section
4252, Code of 1906.

We have carefully considered the question involved and
have only found one case directly in point, which is the case
of *Children's House at Atlantic City* v. *Atlantic City*, 68 N.
J. Law, 385, 53 Atl. 399, 59 L. R. A. 947, which holds that
property held beyond the power conferred by law
is not exempt from taxation. We think this prin-
ciple is sound; that it never was the purpose

of the legislature to exempt from taxation any more property than a religious society could lawfully hold. The property involved here is in excess of the amount of property which a religious society can hold, and it cannot be heard to claim an exemption from taxation, in the court of equity, of property which it holds in violation of public policy and the laws of the land.

The chancellor held in accordance with these views, and the judgment will be affirmed.

*Affirmed.*