Johnson City Tax Collector *v.* Mississippi Baptist Hospital.*

(Division B. Nov. 2, 1925. Suggestion of Error Overruled. Nov. 30, 1925.)

[106 So. No. 25074.]

1. Taxation. *Home for nurses, maintained by hospital, situated on separate lot from hospital building, held subject to taxation.*

Where a hospital maintains a home for nurses who are employed in the service of the hospital, where they live when not on duty, and which nurses' home is situated on a separate lot or lots from that upon which the "hospital" building is located, and such nurses' home is not used exclusively for the purposes of such hospital within the meaning of section 4251 (d), Code of 1906 (Hemingway's Code, section 6878 [d]), such property is subject to taxation.

2.  TAXATION. *Nurses' home, maintained by hospital, held not exempt from taxation as property of charitable society.*

    Such property, used as a home for nurses, is not exempt from taxation under section 4251 (f), Code of 1906 (Hemingway's Code, section 6878 [f]).

3.  TAXATION. *Nurses' home, maintained by hospital, not exempt from taxation, though hospital gives course of instruction to nurses employed by it.*

    Such property, used as a home for nurses, is not exempt from taxation under section 4252, Code 1906 (Hemingway's Code, section 6883), although such hospital gives a course of instruction to such nurses employed by it in the proper nursing and treatment of patients.

4.  TAXATION. *Nurses' home, maintained by hospital, held not exempt from taxation as property of charitable organization used for hospital purposes.*

    Such property, used as a home for nurses, is not exempt from taxation under chapter 134, Laws of 1922.

*Headnotes 1. Taxation, 37 Cyc., p. 930; 2. Taxation, 37 Cyc., p. 930; 3.    Taxation, 37 Cyc., p. 930; 4. Taxation, 37 Cyc., p. 930.

APPEAL from chancery court of Hinds county, First District.

HON. V. J. STRICKER, Chancellor.

Suit by the Mississippi Baptist Hospital against A. J. Johnson, tax collector of the city of Jackson, for an injunction. From a decree for complainant, defendant appeals. Reversed, defendant's demurrer sustained, and cause remanded.

*Green, Green & Potter,* for appellant.

I.    The Mississippi Hospital is owned by the Baptist Church, which is a religious society, and, under section 933, Code of 1906, the Baptist Hospital Corporation was organized in 1912. Section 934, Code of 1906, section 4110, Hemingway's Code, lists what property any religious society may hold and own at any one place. This

does not embrace a hospital, and as this statute was the limit of authority for the granting of charters to religious societies, the chapter granted in 1912 to the Baptist Hospital, averred in the bill, authorizing it to build, construct and equip, maintain and carry on a hospital for the treatment of persons suffering from physical ailments and diseases, was unauthorized and void as being beyond the power granted by the legislature to religious societies to hold and own such property, and to engage in the erection and maintenance of hospitals.

There being no authority in the Mississippi Baptist Hospital to hold any real estate for hospital purposes, it follows that the exemptions under section 4251, Code of 1906, paragraphs D and F whereby all property, real and personal, belonging to any religious or charitable society, and used exclusively for the purpose of such society and not for profit is exempt from taxation, as, also property appropriated to and used for any hospital or charitable institution, were granted to religious and charitable societies, having authority and power to hold and own property devoted to charitable purposes, but does not include a religious corporation which is forbidden by its charter, under section 934, to hold any such property, and, being without the right to hold any such property, it could not hold it in violation of the law as exempt.

II. If the court should hold adversely on the foregoing proposition, then the claim of exemption of the hospital does not exist under the constitution and laws of this state. See chapter 50, section 1, Laws of 1900, section 4252, Code of 1906, chapter 134, Laws of 1922, chapter 338, Laws of 1924. In the case at bar, after the assessment for 1924 was in process, chapter 338, Laws of 1924, on April 12, 1924, was passed, and the exemption, if existent at all, was repealed, and this determined the controversy adversely to appellee. Touching the power of the Baptist Church to own property, see *Gunter* v.

*City of Jackson,* 94 So. 844, which is both enlightening and controlling.

It is worth noting that this Mississippi Baptist Hospital is not a public property, not a public benevolence, but is a corporation with a capital and earnings in which the earnings, according to the allegations of the bill, are to be invested by the trustees in increasing the value of the property and in improving the property. A public hospital is defined as one ''created and endowed by the Government for *general charity,*'' and a private hospital as one ''founded and maintained by a private person or corporation, the state or municipality having no voice in the management or control of its property or the formation of rules for its government.'' *30 C. J. 462.*

III.   Even if it should be held that the hospital on Lot ''Q'' was exempt property, the exemption should not extend to this training school for nurses, shown by the record, and which is an element in the business enterprise of the administration of the hospital whereby the services of these nurses are obtained at a nominal cost, in order that they may obtain an education, and the education of nurses is not a public charity, but a private enterprise.

Wherefore, we ask that the decree rendered in this case, be reversed and the injunction granted be dissolved.

*George Butler,* for appellee.

The question is whether or not two lots belonging to the Mississippi Baptist Hospital, one of which is used for a nurses' home, operated as an adjunct to and in connection with the Hospital, and the other used as a means of egress and ingress to the other two lots, are exempt from taxation. The exemption is claimed under paragraphs D and F, sections 4251 and 4252, Code of 1906, and section 1, chapter 134, Laws of 1922.

The hospital was incorporated under the laws of this state on or about January 11, 1922. The charter pro-

vides that its capital should consist of donations; that it should be a benevolent institution without dividends; all earnings would be invested in betterments and improvements; it was authorized to receive donations of money, real and personal property; authorized to build, construct, equip, maintain and carry on a hospital for the treatment of all persons suffering from physical ailments and diseases, and given all the rights and powers conferred upon corporations by chapter 24, Code of 1906, and amendments thereto.

The affairs of the corporation are managed by a board of trustees appointed from time to time by the Mississippi Baptist State Convention, the organization of which is outlined in detail in *Gunter* v. *City of Jackson*, 130 Miss. 637 and 686.

During the year 1924 the city assessed Lots 5 and 6, above mentioned, for *ad valorem* taxes. The city did not assess that part of Lot Q, mentioned above, upon which the main hospital building is located. Section 4252, Code of 1906, section 6883, Hemingway's Code, in substance provides that all property, real and personal, and the revenues derived therefrom, belonging to any religious or charitable society, where the revenues thereof are used for benevolent purposes, shall be exempt. This section was amended by chapter 338, Laws of 1924, leaving out all reference to exemptions in favor of religious or charitable societies. This amendment was effective April 12, 1924, long after the date on which the liability of this property for taxes was fixed.

I. *The property in question is exempt under chapter 134, Laws of 1922.* It will be noted that this statute extends the exemption to all property belonging to a religious, charitable or benevolent organization "which is used for hospital purposes," and which maintains one or more charity wards, where all the income from the hospital is used for the purposes thereof and no part for profit.

The question thus presented is whether Lots 5 and 6 of Block L are "used for hospital purposes." We do not maintain that they are absolutely indispensable to the hospital, but we do contend that they are proper and appropriate to effectuate the objects of the institution, and they are used for hospital purposes within the meaning of the statute.

This court heretofore has not applied a severe and strict rule, nor placed an unreasonable construction on statutes granting exemptions to religious, charitable or educational institutions. The fundamental ground upon which all such exemptions are based is a benefit conferred upon the public by such institutions and the consequent relief, to some extent, of the burden otherwise imposed upon the state to care for and advance the interest of its citizens. *M. E. Church* v. *Hinton,* 92 Tenn. 188, 19 L. R. A. 289.

The court had this fundamental ground in mind when it applied a logical and reasonable construction to the statutes in *Preston* v. *City of Jackson,* 93 Miss. 366; *Adams* v. *Diocese of Natchez,* 110 Miss. 890; *Harrison County* v. *Military Academy,* 126 Miss. 729, and the same rule has been applied in other states. *Mattern* v. *Conevin,* 213 Pa. St. 588; *State* v. *Platt,* 24 N. J. Law 109; *State* v. *Fisk University,* 87 Tenn. 241, 10 S. W. 286; *M. E. Church* v. *Hinton,* 92 Tenn. 188, 19 L. R. A. 289; *Vanderbilt University* v. *Cheney,* 116 Tenn. 259; *Commonwealth* v. *Y. W. C. A.,* 115 Va. 745, 50 L. R. A. (N. S.) 1197; *Sisters of Charity* v. *Chatham,* 52 N. J. Law 273; *Firemen's Assn.* v. *Johnston,* 62 N. J. Law 625; 37 Cyc. 930; *Griswell College* v. *State,* 46 Iowa 275, 26 Am. Rep. 138; *County of Henepin* v. *Brotherhood of Gethsemane,* 27 Minn. 400, 38 Am. Rep. 298, a case very similar to the one at bar.

See also *Monticello Seminary* v. *People,* 106 Ill. 398, 46 Am. Rep. 702; *First Presbyterian Church* v. *New Orleans,* 30 La. Ann. 259, 31 Am. Rep. 224; *People ex rel. Mount Pleasant Academy* v. *Meitzer,* 98 App. Div.

Sept., 1925] Tax Collector v. Miss. Baptist Hospital. 491

140 Miss.]                    Brief for Appellant.

237 (affirmed in 181 N. Y. 511), 73 N. E. 1130; *Black-burn* v. *Houston,* 39 La. Ann. 592, 2 So. 193; *Dakota* v. *Ericson,* 182 N. W. 315, 13 A. L. R. 1189; *Chatham* v. *Sisters of Charity,* 92 N. J. Law, 409, 105 Atl. 204; *State ex rel. Cunningham* v. *Board of Assessors,* 52 La. Ann. 223, 26 So. 872; *White* v. *Smith,* 189 Pa. 223, 43 L. R. A. 498, 42 Atl. 125; *Woman's Home Missionary Society* v. *Taylor,* 173 Pa. 456, 34 Atl. 42.

The facts in this case show that the property here involved is used for hospital purposes within the meaning of chapter 134, Laws of 1922; that the institution maintains one or more charity wards for charity patients; that all income from the hospital is used entirely for the purposes thereof, and that no part of the same is used for profit.

By the demurrer it is admitted that similar training schools are conducted and maintained by all well-regulated modern hospitals; that some of the hospitals provide such nurses in training with homes and quarters in the hospital building proper, and others in annexes or wings annexed to, or adjoining the main hospital building; that all such nurses in training are required to reside and live within the hospital or buildings adjoining or in buildings nearby, under the supervision of the hospital authorities; the house, course of conduct, dress,. etc., are regulated, and that for services rendered the institution in the care and treatment of patients, they receive their board and lodging, and a small salary, insufficient to purchase their necessary books, and are afforded a course of instructions. Therefore, it is respectfully submitted that the property in question is exempt under chapter 134, Laws of 1922, and on this ground alone the case should be affirmed.

II. *The property is also exempt under paragraphs D and F of section 4251, Code of 1906.* These provide for the exemption of all property belonging to any charitable society and used exclusively for the purposes of such society, and not for profit, and all property appropriated

to and occupied and used for hospital or charitable institutions. This institution is a charitable society and institution and hospital, within the meaning of these paragraphs, and is exempt. 26 R. C. L. 318., 37 Cyc. 929. One of the leading authorities as to when a hospital is a charity is *County of Henepin* v. *Brotherhood of Gethsemane,* 27 Minn. 460, 38 Am. Rep. 298.

According to the great weight of authority, the fact that a hospital receives compensation from some of its patients does not affect in any respect its character or liability as a public charity, where such payments are donated exclusively to charitable uses, and not at all for private gain. *Rooser* v. *Peter Bent Brigham Hospital,* 235 Mass. 66; 14 A. L. R. 563, 126 N. E. 292 and note; *Weston* v. *Hospital of Saint Vinson* (Va.), 107 S. E. 785, 23 A. L. R. 907. The case of *Mayor & Aldermen* v. *Vicksburg Sanitarium,* 117 Miss. 709, 78 So. 702, is not an authority against granting the exemption.

III. *The property is also exempt under section 4252, Code of 1906.*

IV. *There is no merit in appellant's contention that the property is unlawfully held.* The corporation is organized for a lawful purpose. It is not an unlawful corporation. Under chapter 24, Code of 1906, corporations for every lawful purpose and of every kind, except for the construction and operation of a railroad, and carrying on the business of insurance, may be created. The church does not own this property. It is owned by the corporation. It is a trustee for those voluntarily contributing the fund.

V. *Chapter 338, Laws of 1924, approved April 12, 1924, does not repeal section 4251, Code of 1906, or Chap. 134, Laws of 1922.* Sections 4251 and 4252, Code of 1906, stand side by side in the Code of 1906; they were adopted on the same day, and, of course, do not repeal each other; they are to be constructed together and each cover different situations. Chapter 132, Laws of 1922, does not

cover the same subject-matter as that dealt with in sec-tion 4252. It applies to a different situation. Chapter 338, Laws of 1924, does not repeal chapter 134, Laws of 1922, or section 4251 of the Code of 1906. It only amends section 4252 and repeals such laws as are in conflict there-with.

Argued orally by *Marcellus Green,* for appellant, and *George Butler,* for *appellee.*

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a bill for injunction against the city tax collector to prevent a sale for taxes of lots 5 and 6, block L. North Park addition, in the city of Jackson, Miss., upon which is situated a house owned by the appellee and used in housing nurses in the employment of the hospital. The bill alleged: That the complainant was incorporated under chapter 24, Code of 1906. That its charter was duly granted on the 11th day of January, 1912, and that said hospital was organized on or about January 16, 1912, and has continuously existed as such corporation since such date, and has invested a large sum of money in the city of Jackson, in hospital grounds, buildings and equipment, and since said date has owned and conducted a hospital for the uses and purposes set forth in its charter, which hospital is at all times open to all reputable physicians, and to people of all denominations, and to those not affil-iated with any denominations. That its entire capital is invested in said property and hospital and equipment, and that all of its capital was donated to it by various and sundry charitable individuals and persons and religious organizations. That the affairs of the hospital are man-aged by twelve trustees, appointed from time to time by the Mississippi Baptist State Convention, which is a vol-untary organization for the purpose of better co-ordinat-ing the work of the separate, independent Baptist churches in the state of Mississippi, and is composed of

messengers from the Baptist churches in the state of Mississippi and the various Baptist church associations in Mississippi, each association being entitled to one messenger for each two hundred members, or fraction thereof, and each church entitled to one messenger for the first one hundred, or fraction thereof, of its membership, and one messenger for each additional fifty members, or fraction thereof. That during the year 1924 complainant owned a tract of land situated on North State street in the city of Jackson, Miss., extending north and south from Carlisle street to Manship street along the east side of North State street a distance of approximately two hundred and fifty-nine feet, and described with particularity the lot upon which the hospital building is situated, and the lot upon which the nurses' home is situated. The hospital building proper and its equipment is on lot Q, and the other buildings are on lots 5 and 6 in block L.

It is further alleged: That the hospital building is equipped with X-ray equipment, operating rooms, a kitchen in which meals for the patients, nurses in training, graduate nurses attending patients, and the other employees of the hospital, are cooked and prepared, and a dining room in which such meals are served. That on lot 5, block L, complainant owns and maintains a two story building or house which is used as a nurses' home, in which said hospital nurses sleep and keep their clothing, said nurses' home for some years past being used by about thirty nurses in training in said hospital. It is further alleged: That on said lots on which said nurses' home is located is a concrete driveway, and from the eastern end of said concrete driveway has been constructed and maintained a hard surface driveway extending back to the southern side (near the rear) of the main hospital building. That said driveway is used and useful as a means of ingress and egress to the coalhouse and rear or back end of said lot 5, and that to provide other means of ingress and egress to the coalhouse and rear or back end of said lot 5 would necessitate the abandonment of the present driveway and its

removal further south at a considerable expense, or the
construction of a new driveway from Carlisle street to the
rear of said lot 5 at a considerable expense. That said
concrete driveway is also used and useful as a means of in-
gress and egress to the rear of said hospital building. It
is the only means at present of ingress and egress for
wagons or trucks delivering coal, wood, and fuel used in
the heating of said main building, and cooking thereat,
and is constantly in use, and is the only means of ingress
and egress in the nighttime for patients being taken from
or received into said hospital. That, in order to provide a
means of ingress and egress for such wagons and trucks
and patients in the nighttime to the main hospital build-
ing, without going over any portion of or across said lot
6, it would be necessary for complainant to construct a
new driveway from North State street along the south
side of said lot Q. to the rear of said main hospital build-
ing, and to grade down said elevation approximately
twelve feet, at a considerable expense and outlay of
money, and a driveway so constructed would seriously
depreciate the value of said lot Q as a site for the main
hospital building, and would interfere with the quietude of
patients in said hospital, and would entail a considerable
outlay of money. A driveway for the purposes aforesaid
might be constructed to the rear of said hospital across
the vacant portion of said lot Q back of the main building,
but this would necessitate the grading of the embankment
approximately ten feet high and the building of a drive-
way around the rear of said building to the south side
thereof near the rear, for the unloading and delivery of
fuel, coal, etc., and for the receiving and discharging of
patients in the nighttime, and would entail a large outlay
of money, and would detract from the value of the proper-
ty as a hospital site, and would detract from the desira-
bility of the premises and the buildings thereon as a hos-
pital.

It is further alleged that lot 6, block L is further used
and useful to the hospital for the purpose of affording

ventilation and light to said hospital and quietude for the patients therein, and also is used and useful as a place of recreation for convalescent patients at said hospital, and in order to make said hospital and its grounds attractive as a hospital.

It is further alleged: That complainant maintains a first-class hospital, consisting of seventy-five beds, with necessary equipment, furnishings, etc., and maintains twenty-three charity beds for charity patients. That approximately thirty-seven per cent. of all patients in said hospital are full charity patients and pay no compensation whatever. That, in addition to this, there are a large number of other patients who pay only a part of the actual costs incurred by complainant in and about the treatment and accommodation afforded such patients. It is alleged that all of the income from said hospital is used entirely for the purposes thereof, and that no part of the same is used for profit, but all surplus income is reinvested in equipment for the hospital.

It is further alleged that the hospital conducts a training school for nurses as an incident to its business, and, as an incident to the operation of the hospital, it receives into its services and employment young women who wait upon and attend the patients of said hospital, and who receive a prescribed course of instruction from graduate nurses and physicians connected with said hospital in the art and science of nursing and caring for the sick, and upon the completion of said prescribed course of three years the hospital grants a certificate or diploma certifying to the fact.

It is further alleged that throughout the year 1924 complainant had in training on an average an excess of thirty nurses taking said prescribed course of study, and attending and waiting upon patients of said hospital, and that said nurses occupied said nurses' home as aforesaid as a place to sleep and keep their clothing.

It is further alleged: That similar training schools for nurses are conducted and maintained by all well-regulated

and properly conducted and operated modern hospitals of any size in the state of Mississippi, and elsewhere. That many of the modern hospitals provide such nurses in training with homes and quarters in the hospital building itself, and others provide such nurses with homes and quarters in an annex, wings, or buildings attached or annexed to or adjoining the main hospital building. That, under the rules and regulations of all such hospitals, the nurses in training are required to reside and live within the hospital or building adjoining or in close proximity thereto, and such buildings are usually owned, controlled, and supervised by the hospital authorities, and that such nurses in training are required to wait upon and attend to the patients in said hospital on an average of eight hours a day, and to conform to the rules and requirements of the hospital authorities in the course of instruction, examination, dress, hours of recreation, etc., and for which services they receive only a nominal salary, not sufficient, in the case of the complainant, to purchase the books required for the course of study to be pursued.

Complainant further alleged that it is a charitable society within the meaning of clause (d) of section 4251, Code of 1906, and that all of its property, real and personal, described as aforesaid, is used exclusively for hospital purposes, and not for profit, and that its said property is appropriated to, and occupied and used for, a hospital within the meaning of said clause (f) of section 4251, Code of 1906. It is further alleged that no dividends are declared, and that all the revenues derived from said property are used for benevolent purposes, and that therefore all said property is exempt from taxation.

Complainant further alleges that all of said property is specifically exempt from taxation under section 1, chapter 134, Laws of 1922, which provides:

"That all property real or personal whether belonging to religious or charitable or benevolent organizations, which is used for hospital purposes and which maintains one or more charity wards that are for charity patients,

and where all the income from said hospital is used entirely for the purposes thereof and no part of the same for profit, shall be exempt from all taxation, both *ad valorem* and privilege.''

Complainant then alleges that, notwithstanding these facts the city of Jackson, through its authorities, has assessed for *ad valorem* taxes for the year 1924 that part of said property owned and used by complainant and described as lots 5 and 6, block L. of the North Park addition to said city of Jackson, upon which said nurses' home is located, and alleges that said assessment is illegal and void because said property is exempt from taxation, and that said A. J. Johnson, city tax collector, has advertised said property for sale for said alleged *ad valorem* taxes in the sum of one hundred and ninety-one dollars and twenty cents, and damages and costs, aggregating two hundred eleven dollars and seven cents, and that, unless restrained by the court, the said city tax collector will sell said property for the said alleged taxes, and thereby cast a doubt, cloud, and suspicion upon the title of complainant.

The bill of complaint was demurred to by the city of Jackson, on the ground: That there was no equity on the face of the bill; second, that said property and each several portion thereof is liable to taxation, and that there is no exemption of the said property or any part thereof from taxation; third, that said corporation is not exempt upon any of the said property, in this, that said property and all of it is held in contravention of law, and that no immunity from taxation can be implied in favor of it when the church is without power thus to own the said property or any part thereof; fourth, that said property is liable for taxation, and that said bill as to each piece respectively does not set forth any immunity from taxation.

The demurrer was overruled, and the defendant declined to plead further, and decree was entered in favor of the complainant.

The statutes involved in this suit are clauses (d) and (f) of section 4251, Code of 1906 (Hemingway's Code, section 6878), section 4252, Code of 1906 (Hemingway's Code, section 6883), and section 1, chapter 134, Laws of 1922.

Section 4251, Code of 1906 (Hemingway's Code, section 6878, clauses [d] and [f]), reads as follows:

"The following property, and no other, shall be exempt from taxation, to-wit:  . . .

"(d) All property, real or personal, belonging to any religious or charitable society, and used exclusively for the purpose of such society and not for profit.  All property, real or personal, belonging to any college or institution for the education of youth, used directly and exclusively for such purpose."

"(f) Property appropriated to and occupied and used for any hospital or charitable institution."

Section 4252, Code of 1906 (Hemingway's Code, section 6883), reads as follows:

"All public libraries and buildings in which the free public schools are taught, and the lots on which the same are situated, not exceeding four acres in dimensions, with-. out cost to the state or any county or municipality thereof for rent or lease, and also the real and personal property of library associations, used for library purposes where no dividends are declared, and to which the children attending the public schools have free access; and all the property, real and personal, and the revenues derived therefrom belonging to any religious or charitable society or benevolent order on the lodge· system where no dividends are declared and where the revenues' thereof are used for fraternal and benevolent purposes, shall be exempt from all state, county, and municipal taxes."

It will be noted, from a reading of the bill of complaint, that the city of Jackson made no effort to tax the hospital building proper, nor the grounds on which it is situated, lot Q, but did tax the property upon which the nurses' home is situated.  Argument was addressed largely as to

the right of an exemption of the hospital property, it being contended by the city that the hospital is a corporation for profit because the earnings above expenses were shown by the bill of complaint to be invested in additional property for the hospital, and that earnings constitute profits within the meaning of the statute. It is also contended by the city that the bill of complaint shows that the complainant is in fact owned by the Mississippi State Baptist Association, which association appoints the trustees who operate and control the hospital, and that such association was not entitled to own such property under the law of the state of Mississippi, limiting the property that may be owned by a religious association under the doctrine announced by this court in *Central Methodist Church* v. *City of Meridian,* 126 Miss. 780, 89 So. 650, and *Gunter* v. *City of Jackson* and *City of Jackson* v. *Gunter,* 130 Miss. 637, 94 So. 844, while the appellee contends that, inasmuch as the complainant was incorporated under the law of the state, and inasmuch as its capital consists of donations made to it by charitably inclined people and by religious organizations, it is a strictly charitable organization, and does not belong to the Mississippi State Baptist Association in any legal sense.

Inasmuch as the city of Jackson has not attempted to tax the hospital building proper or the grounds on which it is situated, the right of the city and of the state to tax that is not here presented, and, as the consideration of that question would be both difficult and improper if the cause can be decided without deciding that question, which we think it can, we reserve that question until it is properly presented, if it should ever be so presented.

In our view the maintaining of a home for the nurses employed by the hospital and for other employees of the hospital is not a hospital purpose within the meaning of the statute. The statute contemplates such uses as are reasonably necessary to an effective discharge of the powers and duties of the hospital under its charter powers. It is not necessary, for the proper operation of a

hospital, that the corporation should furnish homes for the nurses when not on duty. They are no different from other people who work and pay for board and lodging or furnish their own homes when off duty and performing no service necessary for the proper operation of a hospital. It would be an unwarranted distinction, by construction of the language of the statute, to hold that buildings used merely as a rooming house for employees come within the meaning of the statute. See *Thurston County* v. *Sisters of Charity,* 14 Wash. 264, 44 P. 252; *Philadelphia* v. *Jewish Hospital Ass'n,* 148 Pa. 454, 23 A. 1135; *Re Sisters of Blessed Sacrament,* 38 Pa. Super. Ct. 640; *Phi Beta Epsilon Corporation* v. *Boston,* 182 Mass. 457, 65 N. E. 824; *Calvary Baptist Church* v. *Milliken,* 148 Ky. 580, 147 S. W. 12; *People ex rel.* v. *Y. M. C. A.,* 157 Ill. 403, 41 N. E. 557; *Auditor General* v. *Woman's Temperance Ass'n,* 119 Mich. 430, 78 N. W. 466; *School District* v. *Howe,* 62 Ark. 481, 37 S. W. 717; *Baptist B. & M. Society* v. *Boston,* 204 Mass. 28, 90 N. E. 572; *All Saints Parish* v. *Brookline,* 178 Mass. 404, 59 N. E. 1003, 52 L. R. A. 778; *First Christian Church* v. *Beatrice,* 39 Neb. 432, 58 N. W. 166.

In the case of *Phi Beta Epsilon Corporation* v. *Boston,* 182 Mass. 457 at page 459, 65 N. E. 824, 825, the court said:

"But the housing or boarding of students is not of itself an educational process any more than is the housing or boarding of any other class of human beings. The nature of the process, so far as respects its educational features, is not determined solely by the character of those who partake of its benefits. Suppose a number of students of the Institute of Technology should conclude to provide lodging and board for themselves on some cooperative plan, and for that purpose should buy and occupy a house not in any way connected with the grounds or property of the institution, could it be said that such a house was used for an educational purpose? Suppose again, that these students were incorporated for the purpose of providing board and lodging for themselves and others while students, could it be said that the use of the

real estate for such purposes was an educational process? The trouble with the plaintiff's case is that the property may have been found, as above stated, to have been used as a dormitory or boarding house, that this was the dominant use and was in no way necessary or convenient for such slight and incidental educational or scientific instruction as was furnished by the plaintiff, and therefore was in no proper sense a part of, or merely incidental to, such instruction.''

We are therefore of the opinion that the nurses' home and the lot on which it is situated in the city of Jackson, assessed for taxation by the city, is subject to taxation, and that it was error to overrule the demurrer.

The judgment of the court will be reversed, the demurrer sustained, and the cause remanded.

*Reversed and remanded.*