IOTA BENEFIT ASSOCIATION, A CORPORATION, APPELLANT, v. COUNTY OF DOUGLAS, APPELLEE.

85 N. W. 2d 726

Filed November 1, 1957. No. 34182.

*Young, Holm & Miller* and *Edmund D. McEachen,* for appellant.

*Eugene F. Fitzgerald, John C. Burke,* and *August Ross,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas County. It involves the question of whether or not certain real property located at 4120 Dewey Avenue, Omaha, Douglas County, Nebraska, owned by the Iota Benefit Association, a Nebraska non-profit corporation, is exempt from taxation because it is owned and used exclusively for charitable and educational purposes within the intent and meaning of the Nebraska constitutional and statutory provisions relating thereto.

The property is legally described as: "Lots Twenty-five (25) and Twenty-six (26), Block Sixteen (16), Highland Place, an Addition to the City of Omaha, as surveyed, platted and recorded, Douglas County, Nebraska." Since February 26, 1952, it has been owned by the Iota Benefit Association and used by Iota Chapter of Phi Rho Sigma, a national fraternity the membership in which is limited to medical students, as a fraternity house. Prior to February 26, 1952, and since June 29, 1928, it was owned by Iota Investment Company, also a non-profit Nebraska corporation, and occupied by the same fraternity. Membership in both corporations was and is primarily limited to alumni of the fraternity.

In 1951, 1952, 1953, and 1954 this property was assessed and taxes levied thereon by the county of Douglas and the city of Omaha. On November 18, 1954, Iota

Benefit Association paid under protest the taxes levied on this property by the county for the years of 1951, 1952, and 1953 and by the city for the years of 1952, 1953, and 1954, basing its protest on the contention that the property was not subject to taxation for those years because it was owned and used during that time exclusively for charitable and educational purposes and not owned or used for financial gain or profit.

Within the time required by the statutes then in effect, Iota Benefit Association filed a claim with the county board of Douglas County asking that the taxes it had paid under protest be refunded. Its right to a refund thereof was made on the same basis as the protest. The county board disallowed the claim. An appeal was taken to the district court. That court sustained the action of the county board and dismissed the appeal. Its motion for new trial having been overruled, Iota Benefit Association perfected an appeal to this court.

Article VIII, section 2, Constitution of Nebraska, provides, insofar as here material, that: "The Legislature by general law may exempt * * * property owned and used exclusively for educational, * * * charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user."

In this respect the Legislature provided that: "The following property shall be exempt from taxes: * * * (3) Property owned and used exclusively for educational, * * * charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user; * * *." § 77-202, R. R. S. 1943.

In Watson v. Cowles, 61 Neb. 216, 85 N. W. 35, we said: "A person who claims that his property is not subject to taxation must show affirmatively the facts rendering it exempt." And in Y.M.C.A. of Omaha v. Douglas County, 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123, we said: "* * * the property which is claimed to be exempt must come clearly within the provisions granting

such exemption." However, we said in Ancient and Accepted Scottish Rite v. Board of County Commissioners, 122 Neb. 586, 241 N. W. 93, 81 A. L. R. 1166, that: "* * * while it is a well-settled general rule that exemptions from taxation are to be strictly construed, and their operation is never to be extended by construction, the power and the right of the state to tax are always presumed, and the exemption must be clearly granted. This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the legislature, but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption." Therein we stated that: "* * * we are committed to the doctrine that, in determining whether or not property falls within a tax exemption provision, the primary or dominant use, and not an incidental use, will control."

The evidence establishes that the property was neither owned nor used for financial gain or profit by either the owners or users during the period in question. It can also be said there was not sufficient evidence adduced at the trial showing the property was owned and used for charitable purposes to make that an issue here. Consequently the only question remaining is, was it owned and used exclusively for educational purposes?

In Ancient and Accepted Scottish Rite v. Board of County Commissioners, *supra*, in discussing the question of what is meant by educational purposes, we said: "* * * lexicographers and the courts agree in defining 'educational' as pertaining to 'education.' The latter word taken in its full sense is a broad, comprehensive term and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical."

Iota Investment Company, predecessor to appellant, acquired the property herein involved on June 29, 1928, and, since that time, it has been occupied by the members of Iota Chapter of Phi Rho Sigma as a fraternity house. It was being so occupied at the time of trial under a lease arrangement whereby the fraternity paid appellant $2,700 per annum for its use. Out of this fund appellant pays for the upkeep of the outside of the house and yard, the insurance on the building, taxes, and all other items relating thereto which may come up from time to time. It is not rented on a basis to yield a profit. In fact, part of appellant's income is from donations by its members. The upkeep of the inside of the house is the responsibility of the active chapter.

A careful study of the purposes for which appellant was incorporated, as set forth in Article III of its Articles of Incorporation, reveals objectives which, if they were the primary purpose for which the property was being used, would bring it within the exempt provisions of the statute as it relates to property owned and used exclusively for educational purposes. However, we think, as hereinafter more fully discussed, that the primary use to which the property is being put is covered by the following language contained therein: "* * * to support and maintain, on a cost sharing plan, a dormitory, to provide living quarters for undergraduate members of Iota Chapter of Phi Rho Sigma Fraternity * * *."

To carry out this purpose the foregoing article provides: "The corporation shall have the power to acquire, hold, improve, lease, mortgage and sell real estate and personal property necessary or suitable in the furtherance of its objects and purposes; and shall be vested with all the powers made available to it by the Statutes of Nebraska."

Iota Chapter of Phi Rho Sigma selects its membership exclusively from students attending the University of Nebraska College of Medicine. Its chapter house is located across the street from the campus of the medical

college. The fraternity house consists of three floors and a basement. On the first floor is a large living room, dining room, and kitchen. On the second and third floors are 19 rooms each of which is usually occupied by one or two men for living purposes, which includes study. There are also two bathrooms and a dormitory on the upper two floors. The basement also has two rooms in which members live. In addition thereto it contains a storeroom, recreation room, and bathroom.

At the time of trial the chapter had 115 members of whom 31 were living in the house. However, the number of the latter usually varies somewhere between 30 and 40. Meals are regularly served to those who live in the house and also to all other members, alumni, and guests who stop in at mealtime. Generally speaking the charge made for board and room to those living in the house, and for meals to members and alumni stopping in to eat, is less than it would be outside. All members of the active chapter pay dues which gives them the right to use the house and all its facilities. Although a housekeeper is employed to take care of the house generally, however, each member is responsible for the care of his room and of his bed in the dormitory. The fraternity seems to carry on a reasonably active social program and is a family unit for the members living there. In other words, it provides, in addition to a place to live and study, sufficient activities for relaxation and recreation to properly balance the life of these young men. It is their home while attending the medical college.

As stated in the annotation in 35 A. L. R. 1045: "The primary purpose of a college fraternity house is to furnish a private boarding place and dormitory for the use of the fraternity members; and with this fact in mind, the courts have generally held that college fraternity houses are not exempt from taxation." Some of the cases so holding are: Alpha Tau Omega Fraternity v.

Board of County Commissioners, 136 Kan. 675, 18 P. 2d 573; Phi Beta Epsilon Corp. v. City of Boston, 182 Mass. 457, 65 N. E. 824; Theta Xi Bldg. Assn. v. Board of Review, 217 Iowa 1181, 251 N. W. 76; Inhabitants of Orono v. Sigma Alpha Epsilon Society, 105 Maine 214, 74 A. 19; Kappa Gamma Rho v. Marion County, 130 Ore. 165, 279 P. 555; People ex rel. Carr v. Alpha Pi of Phi Kappa Sigma Educational Assn., 326 Ill. 573, 158 N. E. 213, 54 A. L. R. 1376. As held in Alpha Tau Omega Fraternity v. Board of County Commissioners, *supra:* "A house which is used by members of a college fraternity as a home while attending college is not used exclusively for literary, educational or scientific purposes * * *." And as stated in Phi Beta Epsilon Corp. v. City of Boston, *supra:* "But the housing or boarding of students is not of itself an educational process any more than is the housing or boarding of any other class of human beings. The nature of the process, so far as respects its educational features, is not determined solely by the character of those who partake of its benefits."

But appellant contends these cases are not controlling because the educational benefits received by the members of a social fraternity are not the same as in a professional fraternity where all the members of a class are, to a large extent, taking the same subjects and therefore attending the same classes. We think there is some merit to this contention. Certainly this fact tends to make group study and discussion much more effective than in situations where the members are in different colleges, take different courses, and consequently have different classes.

We have carefully examined all the evidence in regard to what is being done for the active members of Iota chapter in an educational way. While we think what is being done in this regard is above what is being done for the members of the average social fraternity, we are, however, still fully convinced that the primary

purpose to which the property is being put is to provide a fraternity home for the members living in it and a place for the other members to gather for fraternity activities and that the educational benefits the members reap therefrom are incident thereto. It would serve no useful purpose, in this respect, to set out in detail the evidence relating to formal lectures given from time to time at the house by the upperclassmen, graduate students, resident physicians, and faculty members on designated medical subjects; the tutoring of underclassmen by upperclassmen; the study sessions frequently held just before tests; and the benefits, including a better understanding of the ethics of the profession, obtained by active members while visiting with alumni, resident physicians, faculty members, and others stopping at the house to eat or visit. Suffice to say that no formal courses of study are being conducted and that what is being done is only incident to the primary purpose for which the fraternity house is being maintained, which we have already set forth. While it is probably of greater benefit to a member of a professional fraternity, we do not think it is the primary purpose for which the chapter here was established and exists. We think the property here involved is being used as a fraternity house in every way that those words are ordinarily and usually understood.

But appellant points to the case of City of Memphis v. Alpha Beta Welfare Assn., 174 Tenn. 440, 126 S. W. 2d 323, and says that holding should be here controlling. If we were inclined to adopt the reasoning of that court we could agree that it would be precedent for our so holding for generally speaking the factual situation therein is the same as here. But we do not agree with the reasoning of that court and the result therein reached. If appellant thinks it should be exempt from taxation it should apply to the Legislature for specific language so providing as we do not think this court, under the factual situation before us,

should extend the language of the present statute to so provide.

In view of the foregoing we affirm the judgment of the district court.

AFFIRMED.