

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

January 20, 1967

Mr. Jules Damiani, Jr.
Criminal District Attorney
Galveston, Texas

Dear Mr. Damiani:

Opinion No. M-12

Re: Whether the Fraternities
at the University of
Texas Medical School at
Galveston are exempt
from ad valorem taxes on
their property.

In a letter to the Attorney General you have asked to be advised whether a fraternity organized under certain articles of incorporation is liable for the payment of ad valorem taxes to the County and State. You enclosed a copy of the Charter of Phi Rho Sigma Benefit Association of Texas which states its purposes in seven numbered paragraphs, all of which in general provide for the promotion of medical and scientific education for students of the medical branch of the University of Texas, to aid and assist graduates in securing internships, to provide for annual courses of lectures, to maintain a library complementing the school library, and the last two paragraphs reading as follows:

> "6. To support and maintain, on a cost sharing plan, a dormitory providing living quarters and facilities for group study and group discussion.

> "7. To purchase, own and control property (real, personal and mixed) necessary and incidental to the accomplishment of the purposes for which the Association is formed."

You also enclosed a copy of a letter, not dated, from the Deputy Commissioner of Internal Revenue advising that it is his opinion that the above mentioned Fraternity is exempt from Federal income tax under Section 101.14 of the Internal Revenue Code. (This apparently does not refer to the Revenue Code of 1954 but probably was intended to refer to the prior code now annotated in 26 U.S.C.A. 501(c) (7), which is construed to exempt College Greek Letter Fraternities from the Federal income tax.)

- 37 -

Upon receipt of your letter, this office wrote you that we had not been given sufficient facts as to the operation of this organization for us to give you an opinion. In response to our letter, you wrote as follows:

". . . The Fraternity or association is organized as a non-profit, educational association. The Sealy-Smith Foundation loaned money to this association and others to construct Fraternity Houses. These buildings are used all year round to house and board students attending the University of Texas Medical Branch and who are members of the association. They pay a nominal amount of room rent, $20.00 per month. It is estimated that 97% of the students belong to one of these associations. The associations underwrite the expenses to bring lectures to the medical school. Each Fraternity maintains a supervised study program and maintains a medical library. The University of Texas Medical Branch has no dormitories for male medical students and while many of said students live in private residences, others maintain their residence at the Fraternity Houses."

Still desiring to secure additional information as to the operation of the Fraternity at Galveston, this office called you over the telephone and you advised that most of the Fraternities have a library in their Chapter Houses and about once each year, some one delivers a lecture to the students belonging to the Fraternity, and you thought this was the extent of their educational activities. You also advised that the Fraternities carry on social activities in their Chapter Houses.

It appears that the particular Fraternity mentioned by you owns the property and it is not owned by any other organization. We also received a letter from the Secretary-Treasurer of another organization, Nu Sigma Nu Foundation, stating that it was organized in 1950 to support and maintain benevolent, charitable and educational undertakings in the field of medical education and research at medical schools of Texas; that membership in the organization consists of alumni of the Nu Sigma Nu Fraternity; that the Foundation owns the Chapter House in Galveston which offers room, board, and opportunities for professional assistance to

those students who are members of the Fraternity. We have also received a letter from an alumnus of the same Fraternity enclosing a copy of the Constitution and By-laws of the Foundation giving the same information as to the purpose of the organization and in addition thereto, states that the Foundation borrowed money and has been repaying the loan by rent it is charging the local chapter of the Fraternity.

It appears that some of the local chapters of the Fraternities owned their homes while others rent them from other organizations organized for the purpose of assisting the local chapters. However, it is immaterial as to which organization may own the property, since, as we shall later see, it is the "use" of the property that determines whether it is exempt from ad valorem taxes. We also call attention to the fact that the mere fact that the Internal Revenue Service has ruled that the Fraternity is exempt from the Federal income tax does not create an exemption from the State and County ad valorem taxes.

If the Fraternities mentioned are exempt from the ad valorem taxes, such exemption must be authorized by Article VIII, Section 2 of the Constitution of Texas which provides that the Legislature may exempt "all buildings used exclusively and owned by persons or associations of persons for school purposes" and Article 7150, subdivision 1, Vernon's Civil Statutes, which provides, among others, for exemption of "buildings used exclusively and owned by persons or associations of persons for school purposes." It does not seem to be claimed by any of the Fraternities that they are religious or charitable organizations exempt under the provisions of the Constitution and Statutes.

The question, then, to be decided is whether the property owned or occupied by the Fraternities mentioned fall within the above provisions of the Constitution and Statute exempting property used exclusively for school purposes. In our opinion, they do not, and therefore, such property is not exempt from ad valorem taxes.

Even if we should hold, which we do not, that the local chapters of Fraternities qualified as using the property "exclusively for school purposes" such property which is rented from another person or corporation is not exempt. Under the decision of Smith v. Feather, 149 Tex. 402, 234 S.W.2d 418 (1950), a rented building used exclusively

- 39 -

for school purposes is not exempt. In order to be exempt the buildings must be owned by those who use it exclusively for school purposes. Even as to those local chapters of the Fraternities that own their property, we do not believe from the facts stated, and the facts generally known, as to the operation of College Greek Letter Fraternities, that the property is used "exclusively for school purposes" as provided by the Constitution and Statutes.

We do not find any appellate court decisions in Texas or Attorney General Opinions pertaining to the taxation of fraternities. However, we do find a judgment of a trial court, being No. 117,411, Sigma Nu Home Association of Texas v. City of Austin, Texas, 126th District Court, Travis County, Texas, in which a judgment was rendered on the 28th day of September 1965, and no appeal was taken from said judgment. In this case, the Fraternity claimed an exemption from the City taxes on the Chapter House located in Austin. Several issues were submitted to the jury as to whether the local chapter of Sigma Nu Fraternity had been engaged in promoting religious, educational and physical development of young men who attend the University of Texas. All questions pertaining to the claimed exemption were answered against the Fraternity and judgment was entered that the property was not exempt from taxation and that the Plaintiff take nothing.

An exemption from taxation cannot arise through inference or implication, but must be established by terms too clear and plain to be mistaken. Memorial Hospital v. State, 253 S.W.2d 1012 (Tex.Civ.App. 1952, error ref., n.r.e.). The exemption cannot be enlarged by either the Legislature or the courts. Wichita Falls v. Cooper, 170 S.W.2d 777 (Tex.Civ.App., 1943, error ref.).

The exemption for schools originally contained the same wording in the Constitution and the Statute, but in the 1925 Code, the word "such" was added before the term buildings in that portion of Article 7150, subdivision 1, hereinabove quoted, but the Supreme Court in Smith v. Feather, supra, held that the word "such" did not limit the exemption of school property to public buildings.

In Theta Xi Bldg. Ass'n of Iowa City v. Board of Review, 251 N.W. 76 (Sup. Ct. of Iowa, 1933), the Theta Xi Bldg. Ass'n claimed that its property was exempt from taxation since the objectives of the corporation were defined

Mr. Jules Damiani, Jr., Page 5 (M-12)

in its articles to be "'To promote the general moral, social, educational and literary welfare of the members * * * and to acquire, maintain and operate a Chapter House, home and dormitory, and a place for study and education for the members etc.'" In holding that the Fraternity was not exempt from taxation, the Court said:

> "The appellant claims it is a literary, scientific, charitable, and religious institution or society within the meaning of the foregoing statutory provisions, and claims that the character or nature of the appellant is to be determined by its declared purposes and nature as set forth in its articles of incorporation. With the latter claim we cannot agree. It is the use of the property, rather than the declaration made in the charter of the appellant, which determines the question as to its exemption from taxation. Delta Kappa Epsilon Soc. v. Lawler, 179 N.Y. 535, 71 N.E. 1136. Property used with a view to pecuniary profit is not exempt from taxation under the provisions of the statute quoted, even though the funds received are used for paying the unkeep of the property and the discharge of the debt thereon. . . . We must keep in mind that taxation is the rule, exemption is the exception, and that statutes under which exemptions are claimed should be strictly construed, and that those claiming exemptions must show themselves entitled thereto. . . ."

The Court also said:

> "Only two jurisdictions Indiana and Oklahoma, so far as we have been able to discover, have held fraternity properties exempt from taxation."

The Court distinguished the Indiana case by saying that the Statute expressly exempted Greek Letter Fraternities from taxation and that the Oklahoma case provided for exemption under a Statute authorizing exemptions of certain libraries, scientific, educational and religious institutions, etc.

- 41 -

In conclusion, the Court said:

"In the instant case the evidence dis-
closes that the dominant use of the property
of the appellant was that of a dormitory,
boarding house, and place of social and
fraternal intercourse, and home for its
members during the college school year; and
that any literary or scientific purposes
for which it might occasionally have been
used were merely incidental. Even though
it were found that the property of the
fraternity might be included in some one
or more of the classifications of property
exempt under the provisions of the statute,
there still would be a serious doubt as to
whether the property was used solely and ex-
clusively for such particular purposes.
However, it is not necessary to base our
ruling upon such contingencies. If the
Legislature had intended to exempt prop-
erty of the kind here involved, owned by
fraternities such as the appellant, it
should and certainly would have named such
societies or organizations in the exemption
statute under consideration. Having failed
to do so, we should not extend the provisions
of the statute by construction and include
property therein without legislative authority.
We hold, therefore, that the property of the
appellant was not, and is not, exempt from
taxation, and that the trial court was right
in so holding. . . ."

In Alpha Tau Omega Fraternity v. Board of County
Com'rs,18 P.2d 573 (Sup. Ct. of Kan. 1933), a suit was
brought by the ATO Fraternity claiming an exemption from
taxation of its property and the suit was also brought in
behalf of fifty-two other fraternities similarly situated.
Exemption was claimed under a provision of the Constitution
of Kansas which provided for an exemption on:

". . .'. . . All property used exclu-
sively for . . . literary, educational,
scientific . . . and charitable purposes,
. . .'"

The Court made findings of fact which describe the
operation and conduct of the fraternities. We believe that
the description given by the Court is representative of fra-
ternities as generally known by college students and adminis-
trators as well as the public.

The Court in holding that the property was not exempt
from taxation said:

> "The commissioner made extensive findings
> of fact and conclusions of law. The facts
> necessary for our consideration are that the
> real estate in question was owned by a corpora-
> tion organized for the purpose of holding the
> title; that this corporation is formed by
> alumni members of the society, the property
> is occupied by the members who are in school,
> and these members pay a certain amount to the
> holding company each year to be used in pay-
> ing part of the principal and the interest
> on the mortgages which are on the property.

> "The funds necessary to operate the house
> are raised by dues from the active members or
> by donations. The house consists of nine study
> rooms, two libraries, a dining room, a kitchen,
> music room, living room, and dormitory. It is
> used by the members about as their homes would
> be used if their parents lived in Lawrence.
> There is a committee of upper classmen who
> supervise the study of lower classmen and take
> disciplinary measures when deemed necessary.
> The dormitory is on the third floor. Sleeping
> quarters are available for about fifty people,
> and from time to time visiting fraternity
> brothers and athletes are entertained. The
> society owns and maintains a library for use
> of the members in their school work.

> "The house is presided over by a
> house mother who assists in giving the
> members training in etiquette, culture,
> and social decorum. During the school
> years 1929 and 1930, three parties were
> given in the house. About $1,000 was
> spent for these parties. The living room,

lounging room, and dining room are large
and commodious. During the school year,
card parties, social dances, and other
functions are given in the house.

"No part of the building or the
grounds was rented or used for profit
during the years 1929 and 1930 except that,
when the full purchase price of the pro-
perty has been paid, future members of the
fraternity will probably reap the benefits
through a reduced expense of living during
their school life.

". . . .

"'The fraternity is a secret and
fraternal organization and maintains in the
house what is known as a chapter room in
which is kept its ritualistic paraphernalia
and in which its ritualistic work is conducted.
Alumni members continue honorary members of
the fraternal side of the organization and
are privileged to attend the secret and
ritualistic meetings of the chapter.'

"The further findings were that all
the plaintiffs were substantially the same
as the one named; that in the year 1930 the
assessed valuation of all the real property
owned by college fraternities in Douglas
county was $899,830, and that the assessed
valuation of the personal property was
$50,000; that the aggregate tax levied
against the real property was $31,044.06
and the total tax levied against the personal
property was $1,765.10."

In Iota Benefit Asso. v. County of Douglas, 165 Neb.
330, 85 N.W.2d 726, 66 A.L.R.2d 898 (1957), the Court held
that property owned by a nonprofit corporation is not exempt
from taxation under the Nebraska Constitution and statutory
provisions providing for an exemption of property "owned and
used exclusively for educational purposes" where it is used
by members of a National Fraternity limited to medical students
for the primary purpose of providing living quarters while

attending college and the educational activities conducted therein are merely incidental thereto. This decision is annotated in 66 A.L.R.2d at page 904, et seq. where it is said:

> "With few exceptions the courts have held that college fraternities and sororities are not exempt from taxation, because they exist primarily for the convenience of their members, and are mainly concerned with providing them with board, lodging, and recreation, while any educational, charitable, and benevolent purposes are of secondary importance. . . ."

The above annotation cites cases supporting it from the states of Georgia, Illinois, Iowa, Kansas, Louisiana, Maine, Massachusetts, Nebraska, New Jersey, New Mexico, New York, Oregon, Rhode Island, and South Dakota. At page 908 of the same annotation, it is said:

> "The arguments have been unsuccessfully advanced that the property of a fraternity should enjoy the same exemption from taxation as accorded to regular college dormitories, where student housing was inadequate at the college, or where the fraternity chapter house was built on college grounds.

> "Even where the fraternity supplies a necessary accommodation for students which has not been provided by the educational institution itself, and but for sorority houses, the state would be put to the expense of building and maintaining additional dormitories, it was nevertheless held in Albuquerque Alumnae Asso. v. Tierney (1933) 37 NM 156, 20 P2d 267, that a sorority would not be tax exempt, the court saying that it did not necessarily follow that where the educational institution itself had failed to furnish necessary facilities and adjuncts to education, or had inadequately furnished them, the same exemption would attach to property devoted to the same purposes by the students themselves, or by some independent agency such as a fraternity or sorority."

- 45 -

In 84 C.J.S. Sec. 294, page 602, it is said:

"College fraternities and sororities may be exempt from taxation under statutes expressly relating to Greek letter fraternities, or under statutes exempting property of fraternal orders or societies generally, or under statutes exempting a building used by a college as a literary hall or dormitory. Since the dominant purpose of a college fraternity is generally domestic or residential, under the great weight of authority tax exemptions have not been granted to college Greek letter fraternities except under express statutory authority.

"A fraternity or sorority will ordinarily be denied exemption as a benevolent, charitable, educational, library, literary, religious, or scientific institution, and cannot secure exemption as a corporation organized for the moral and mental improvement of men.

"No blanket rule can be laid down and made applicable to all fraternities. Whether or not the property of a fraternity is exempt from taxation is dependent, as in all other cases, on the use made of the property. Each case must be determined on its own facts, and the property may be exempt as such if under the facts of the particular case it appears that it is used exclusively for educational purposes, or for the promotion of educational, moral, charitable, and public welfare. Under a statute providing for exemption of the real property of a corporation organized exclusively for educational purposes, and used exclusively for carrying out such purposes, fraternity houses owned by a college are not exempt.

"A corporation existing for the purpose of owning and operating a house for use as a residence by the members of a fraternity chapter can claim no credit for the purposes and activities of the chapter

as a ground for exemption from taxation
as a charitable or benevolent corporation,
and where it levies on the chapter annual
charges equivalent to the amount of rent a
corporation would have exacted, such corpora-
tion is neither a benevolent nor a charitable
society entitled to exemption, even though
classified as such for purposes of incorporation."

There are many other cases annotated in 66 A.L.R.2d, 904 et seq., and we will not lengthen this opinion by dis-cussing any others, as we are convinced that under the Constitution and the Statutes of Texas, the properties of the Fraternities mentioned by you are not exempt from ad valorem taxation since they are not used exclusively for school purposes.

### S U M M A R Y

The properties of the frater-
nities at the University of Texas
Medical School at Galveston are
not exempt from ad valorem taxes.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by W. E. Allen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-chairman
Marietta Payne
Mario Obledo
John Reeves
Bob Towery

Staff Legal Assistant
A. J. Carubbi, Jr.